The **PEOPLE** of the State of Colorado,
Petitioner/Cross–Respondent,

v.

Scott Eugene **EPPENS,**
Respondent/Cross–
Petitioner.

No. 97SC469.

Supreme Court of Colorado,
En Banc.

April 26, 1999.

Rehearing Denied June 14, 1999.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Robert M. Petrusak, Senior Assistant Attorney General, Hugo Teufel, Deputy Solicitor General, Criminal Enforcement Section, Denver, Colorado, for Petitioner/Cross–Respondent.

David F. Vela, Colorado State Public Defender, Karen M. Gerash, Deputy State Public Defender, Denver, Colorado, for Respondent/Cross–Petitioner.

Justice RICE delivered the Opinion of the Court.

We granted certiorari to review *People v. Eppens*, 948 P.2d 20 (Colo.App.1997), in which the court of appeals reversed defendant Scott Eppens conviction for sexual assault on a child and remanded the case for a new trial. The court of appeals held that plain error occurred when a social worker testified that the child-victim's report of the sexual assault in question was "sincere." In addition, the court of appeals issued an advisory opinion regarding the admissibility on remand of several prior consistent out-of-court statements made by the victim. We conclude that the social worker's testimony constituted impermissible opinion testimony. We further hold, however, that the court of appeals erred in concluding that the admission of this testimony constituted plain error warranting reversal of Eppens' conviction. With regard to the second issue, we hold that the trial court did not err in admitting the victim's prior consistent statements, as they were relevant, nonhearsay statements that were admissible outside CRE 801(d)(1)(B). Accordingly, we reverse the court of appeals decision and remand to that court with directions to reinstate the judgment and sentence.

## I.

On May 19, 1994, the defendant, Scott Eppens, was charged with one count of sexual assault on a child by one in a position of trust.[1] This charge arose out of an allegation by Eppens' twelve-year-old stepdaughter, L.E., that he had molested her on several occasions, the last of which allegedly occurred on March 6, 1994.

On March 8, 1994, Eppens was arrested and placed in jail for physically assaulting L.E.'s mother, Darlene Eppens. Thereafter, L.E. told her mother that Eppens had molested her. This report to her mother was the first time L.E. told anyone of the alleged sexual assaults. In turn, Darlene Eppens notified the Pueblo Department of Social Services of the allegations. On March 24, 1994, a social worker, Eleanor Gutierrez, and a Pueblo police officer, Jerry L. Pino, met with L.E. and her mother in order to conduct a formal interview. Officer Pino made a record of the statement L.E. gave during this interview. Subsequently, L.E. underwent a physical examination which revealed findings consistent with sexual penetration.

On August 2, 1994, L.E. wrote a letter to Eppens, who was in jail awaiting trial, in which she recanted her previous accusations of sexual assault. In that letter, L.E. claimed that her stepbrother, S.E., had actually assaulted her.

Eppens' trial commenced on September 7, 1995. At trial, the prosecution presented four witnesses: L.E.; Officer Pino; the social worker; and the physician who examined L.E., Dr. Christine Nevin–Woods. Contrary to her letter but consistent with her initial accusations, L.E. testified that Eppens had molested her on several occasions, including an incident which occurred on March 6, 1994. On cross-examination, defense counsel impeached L.E. by reading the prior inconsistent statements from her letter into evidence and questioning her at length regarding her reasons for writing it. Furthermore, defense counsel elicited an admission from L.E. that

she was angry with Eppens for assaulting her mother on March 8, 1994. Finally, defense counsel impeached L.E. by pointing out several factual discrepancies between her trial testimony and her March 24, 1994 statement to the police.

Thereafter, the prosecution presented the testimony of Officer Pino, who testified at length regarding the interview that he and the social worker had conducted with L.E. on March 24, 1994. Through Pino's testimony, the prosecution introduced several of L.E.'s out-of-court statements which were consistent with her testimony on direct examination. Defense counsel objected to the admission of these statements on the grounds that they constituted inadmissible hearsay.[2] In response, the prosecution argued that the statements were admissible under CRE 801(d)(1)(B), as prior consistent testimony to rebut an express or implied charge of recent fabrication or motive, or, in the alternative, as rehabilitation evidence. The trial court overruled the defense objection and allowed Officer Pino to relate L.E.'s statements from the March 24 interview.

Following Officer Pino's testimony, the prosecution examined the social worker, Eleanor Gutierrez. During her testimony, the following exchange occurred:

Q. Ms. Gutierrez, how long have you been doing interviews of this sort with child sexual abuse victims?

A. Five years.

Q. Do you know how many interviews of this kind you have conducted yourself or with somebody?

A. I would say more than 50.

Q. What do you look at about them when they are telling you about an abuse?

A. Their affect, their demeanor, whether they're sad. Basically that.

Q. Are you able to make a determination about a child's sincerity from those kinds of characteristics?

---

1. See § 18–3–405.3, 6 C.R.S. (1998).

2. Prior to trial, the prosecution moved to admit L.E.'s statements to Officer Pino pursuant to section 13–25–129, 5 C.R.S. (1998). The trial court held that L.E.'s statements were not admis-

sible under that section, as the domestic violence incident "could cause the child to have a bias against the Defendant or could account for the contents of the statement."

A. It would be subjective. I mean yeah, I get a feeling as to whether a child is sincere or not.

Q. Did you draw any such conclusions about [L.E.]?

A. I felt she was sincere.

Defense counsel did not object to this line of questioning at the time of the trial.

The jury returned a guilty verdict and the court sentenced Eppens to a term of eight years in prison. The court of appeals reversed Eppens' conviction, holding that the admission of the social worker's opinion that L.E. was "sincere" when making her allegations violated CRE 608(b). The court reasoned that the social worker's testimony constituted an opinion that L.E. was telling the truth on the specific occasion that she reported the sexual assault by Eppens, a type of opinion testimony that is inadmissible. The court further held that the admission of the social worker's opinion regarding L.E.'s sincerity constituted plain error.[3]

In the interest of judicial economy, the court of appeals addressed Eppens' claim that on remand for a new trial, the prosecution should not be permitted to introduce L.E.'s out-of-court statements to Officer Pino. In an effort to clarify the requirements of CRE 801(d)(1)(B), the court of appeals held that a prior consistent statement offered to rebut a charge of recent fabrication or motive must have been made *prior to* the alleged motive or fabrication in order to be admissible. While the court acknowledged that L.E.'s statements to Officer Pino and the social worker were made *after* her alleged *motive* to lie arose, it held that the statements were admissible because the prosecution had offered the statements in response to a *separate* charge of "recent fabrication." Specifically, the court found that the implication by the defense that L.E.'s trial testimony was false represented a charge of recent fabrication, separate and apart from the allegation that her mother was pressuring her to lie about the sexual assault. Therefore, the court of appeals concluded that because the prior consistent statements had preceded the alleged recent

fabrication, they could properly be admitted on remand.

We granted the prosecution's petition for certiorari to consider whether the social worker's testimony that L.E. was "sincere" violated the confines of CRE 608 and, if so, whether the admission of said testimony constituted plain error. We granted Eppens' cross-petition for certiorari to consider whether the court of appeals erred in concluding that L.E.'s prior out-of-court statements were admissible under CRE 801(d)(1)(B).

## II.

■  Under CRE 404(a), "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." CRE 608(a) provides a limited exception to the general rule of CRE 404(a), to wit:

*Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

■  It is well established that CRE 608(a)(1) does not permit a witness to offer an opinion that a child was telling the truth on the specific occasion that the child reported a particular sexual assault by a defendant. *See People v. Gaffney,* 769 P.2d 1081, 1088 (Colo.1989) (holding that physician's statement that medical history given by child-victim was "very believable" constituted impermissible opinion testimony on the witness' character for truthfulness); *People v. Oliver,* 745 P.2d 222, 225 (Colo.1987) (holding that testimony by a social worker and an investigator that they both personally believed the victims' statements was improperly admitted because it related to the victims' truthfulness

---

**3.** Judge Kapelke dissented from this portion of the opinion and wrote separately to emphasize

that he did not find that the admission of the testimony constituted plain error.

on a specific occasion); *People v. Snook*, 745 P.2d 647, 649 (Colo.1987) (holding that social worker's testimony that children tend not to fabricate stories of sexual abuse was inadmissible because it went to the witness' truthfulness on a particular occasion); *Tevlin v. People*, 715 P.2d 338, 341 (Colo.1986) (holding that social worker's testimony that he believed the child-victim was telling the truth was improper because it failed to refer to the witness' general character for truthfulness and instead went to the witness' truthfulness on a specific occasion). As the social worker's testimony in the instant case is indistinguishable from the testimony at issue in *Tevlin, Snook, Oliver,* and *Gaffney,* its admission constituted error.

The prosecution urges us to find that the social worker's statement that she "felt that [L.E.] was sincere" was not testimony regarding L.E.'s truthfulness on the specific occasion of the interview. Instead, the prosecution argues that the testimony represented a permissible observation of L.E.'s demeanor that was rationally based on the social worker's perception of L.E. at the time of the interview. *See* CRE 701(a) (limiting opinion testimony by a lay witness to those matters rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue); *Farley v. People*, 746 P.2d 956, 958 (Colo.1987) (holding that witness' testimony to the effect that, consistent with the behavior of rape victims, the victim was in a state of shock and was confused as to the chronological order of events when reporting the rape, constituted permissible demeanor testimony). However, we find this characterization of the social worker's testimony unpersuasive.

The meaning of the words "truth" and "sincerity" are too closely related to permit the fine distinction the prosecution urges. In fact, "truth" is virtually synonymous with "sincerity." *See Webster's Third New International Dictionary, Unabridged* 2457 (1986) (defining "truth" as "sincerity in character, action, and speech"). Therefore, the social worker's statement that she found L.E. to be "sincere" is tantamount to a statement that she found L.E. to be truthful. Accordingly,

we hold that the trial court erred in admitting the social worker's statement that she felt that L.E. was sincere, because this statement constituted impermissible character testimony.

As Eppens failed to make a contemporaneous objection to the social worker's testimony, our review is limited to determining whether the error rises to the level of plain error. *See Walker v. People*, 932 P.2d 303, 311 (Colo.1997). Plain error occurs when an error or defect affects the defendant's substantial rights. *See* Crim. P. 52(b); C.A.R. 35(e). In order to rise to the level of plain error, an error must have so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Walker*, 932 P.2d at 311. We hold that the error in this case does not rise to that level.

In order to determine the effect of this error, we must evaluate it in light of the entire record below. *See Wilson v. People*, 743 P.2d 415, 420 (Colo.1987). Our review of this record reveals several factors which mitigate the potential power of the social worker's remark. First, L.E. herself testified and was vigorously cross-examined prior to the social worker taking the stand. During the course of her testimony, L.E. recounted the details of the alleged assaults at length, providing the jury with a full opportunity to judge her credibility in light of her demeanor.

Second, the social worker testified as a lay witness. She was neither offered nor received as an expert. Although she testified that she had conducted over fifty interviews of this nature, she did not purport to have any special skill in determining the sincerity of a child. Furthermore, the social worker admitted that her opinion of L.E. could be disputed. In fact, on cross-examination, she conceded that another person could have witnessed the same interview and come to a different conclusion regarding the truth of L.E's accusations. Moreover, the prosecution did not reference or rely upon the social worker's statement in closing argument or at any other point during the trial.

Finally, we note the similarity between the error in this case and that at issue in *Gaff-*

*ney,* 769 P.2d 1081. In *Gaffney,* a pediatrician testified that the medical history given by the child-victim was "very believable." *See id.* at 1088–89. While we held that this statement constituted impermissible vouching, we concluded that the error was harmless. *See id.* Our conclusion in that case was based in part on the fact that the child-victim's statements to the physician were corroborated by physical findings consistent with sexual assault and through the testimony of the child's mother and the investigating police officer. *See id.*

Likewise, L.E.'s statements to the social worker in the instant case were corroborated by the testimony of L.E.'s physician, Dr. Christine Nevin–Woods. While on the stand, Dr. Nevin–Woods testified regarding the detailed medical history that L.E. related to her during an office visit.[4] This history included L.E.'s descriptions of the alleged instances of molestation, including the incident on March 6, 1994. Dr. Nevin–Woods also testified that her physical examination of L.E. revealed evidence of vaginal and rectal penetration. Finally, Dr. Nevin–Woods testified that L.E.'s physical condition and her oral history suggested "probable abuse with a clear, consistent history of molestation, consistent with vaginal and rectal penetration." This evidence is very similar to that at issue in *Gaffney.* As the error in that case was deemed harmless, the analogous error in the context of this case cannot be characterized as rising to the level of plain error.

### III.

■ Next, we consider Eppens' claim that the admission of several of L.E.'s out-of-court statements through the testimony of Officer Pino was improper under CRE 801(d)(1)(B). That rule provides as follows:

> A statement is not hearsay if … [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is … consistent with his testimony and is offered to rebut an express or implied

charge against him of recent fabrication or improper influence or motive.

CRE 801(d)(1)(B).

Eppens argues that before a statement may be admitted under this rule, it must satisfy an implicit pre-motive requirement, namely, that it must have been made *before* the declarant's motive to lie or improper influence arose. Specifically, Eppens argues that Officer Pino's testimony regarding L.E.'s March 24, 1994 statement did not satisfy this requirement, as that interview occurred *after* her motive to lie, that is, the March 8, 1994 domestic violence incident between Eppens and her mother, arose. Eppens argues that while such a pre-motive requirement is not expressly stated in the text of the rule, it must be implied as a precondition to admissibility. In support of his assertion, Eppens cites the United States Supreme Court's opinion in *Tome v. United States,* 513 U.S. 150, 167, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), in which the Court concluded that Federal Rule of Evidence 801(d)(1)(B) contains a pre-motive requirement.[5]

■ In the advisory portion of its opinion below, the court of appeals, without discussion, adopted the Court's reasoning in *Tome* and thus held that CRE 801(d)(1)(B) contains a pre-motive requirement. We note that in interpreting a Colorado Rule of Evidence, this court is not bound by a United States Supreme Court decision interpreting an identical federal rule. *See People v. Newton,* 966 P.2d 563, 577 (Colo.1998). Nonetheless, because we conclude that the admission of the statements at issue here is not governed by CRE 801(d)(1)(B), we need not reach the issue of whether our rule embodies a pre-motive requirement. Instead, we conclude that the admission of L.E.'s statements was not error, as they were relevant nonhearsay statements properly admitted outside CRE 801(d)(1)(B). Our holding is based on a two-part analysis. Accordingly, in section A we will examine the purpose and limits of CRE 801(d)(1)(B). In section B, we will analyze the standards applicable to the admission of

---

4. The defense does not challenge the admissibility of these out-of-court statements.

5. CRE 801(d)(1)(B) is identical to its federal counterpart in all material respects.

prior consistent statements offered outside of CRE 801(d)(1)(B) and apply these standards to the prior consistent statements at issue in this case.

### A.

At common law, prior out-of-court statements that were consistent with a witness' in-court testimony were generally admissible to rehabilitate an impeached witness on several theories, including: (1) to place a supposed inconsistent statement in context to refute the alleged inconsistency; (2) to support the denial of making an inconsistent statement; (3) to refute the suggestion that the witness' memory is flawed due to the passage of time; and (4) to refute an allegation of improper influence or motive. *See State v. Brown,* 126 N.M. 338, 969 P.2d 313, 325 (1998). *See generally United States v. Rubin,* 609 F.2d 51, 67–69 (2d Cir.1979) (Friendly, J., concurring). However, due to the prohibition against hearsay testimony, such statements could never be used to prove the truth of the matter asserted. *See Rubin,* 609 F.2d at 67–69. Instead, prior consistent statements were only admissible for the nonhearsay purpose of repairing a witness' credibility. *See id.*

CRE 801(d)(1)(B) only mentions the fourth common law theory for the admission of prior consistent statements, that is, the admission of prior consistent statements offered to refute an allegation of improper influence or motive. *See Tome,* 513 U.S. at 170, 115 S.Ct. 696 (Breyer, J., dissenting). Furthermore, the rule adds nothing to our traditional understanding of hearsay law because, by definition, statements offered to rebut a charge of fabrication, motive, or improper influence are "not hearsay," as they are not offered to prove the truth of the matter asserted. *See Brown,* 969 P.2d at 326; Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 406, at 194 (2d ed. Supp.1998).

Therefore, we must look to sources outside the rule in order to determine the meaning and purpose of CRE 801(d)(1)(B). The committee that promulgated the Colorado Rules of Evidence did not comment on its decision to mirror the language of Federal Rule of Evidence 801(d)(1)(B). However, the Federal Advisory Committee's note following the analogous federal rule is instructive in our inquiry. That note reads as follows:

> Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive but not as substantive evidence. *Under the rule they are substantive evidence.* The prior statement is consistent with the testimony given on the stand, and, if the opposite party wishes to open the door for its admission in evidence, no sound reason is apparent why it should not be received generally.

Fed.R.Evid. 801(d) Advisory Committee's Note (emphasis added). This note makes it clear that this rule is intended to broaden the purposes for which certain prior consistent statements can be offered at trial. Whereas at common law such statements were only admissible for the limited nonhearsay purpose of rebutting a charge of motive, improper influence, or recent fabrication, the rule makes them admissible as substantive evidence as well. *See e.g., People v. Tyler,* 745 P.2d 257 (Colo.App.1987); *People v. Andrews,* 729 P.2d 997 (Colo.App.1986). The fact that rule CRE 801(d)(1)(B) permits the use of out-of-court statements for substantive purposes is not in dispute in this case.

■ At issue in this case, however, is the scope of CRE 801(d)(1)(B). Although the Committee's Note reveals the purpose of Rule 801(d)(1)(B), the intended breadth of the rule is much less clear. *See Mueller & Kirkpatrick, supra,* § 406, at 194. Significantly, there is a split of authority among courts on the issue of whether the rule was intended to provide the *exclusive* means for introducing prior consistent statements at trial. On the one hand, several courts have held that where prior consistent statements are not offered for their truth but for the limited purpose of rehabilitation, Rule 801(d)(1)(B) and its concomitant restrictions do not apply. *See, e.g., United States v. Ellis,* 121 F.3d 908, 920 (4th Cir.1997). On the other hand, some courts have held that Rule 801(d)(1)(B) applies even if the proponent of the prior consistent statements does not offer the statements for their truth. *See,*

e.g., *State v. Fulton,* 333 S.C. 359, 509 S.E.2d 819, 826–27 (App.1998).

We concur with the numerous courts that have concluded that Rule 801(d)(1)(B) was not intended to provide the exclusive avenue for the introduction of prior consistent statements. *See, e.g., United States v. Toney,* 161 F.3d 404, 409 (6th Cir.1998); *United States v. Gluzman,* 154 F.3d 49, 51 (2d Cir.1998); *Ellis,* 121 F.3d at 920; *Holmes v. State,* 350 Md. 412, 712 A.2d 554, 559 (1998); *State v. Chew,* 150 N.J. 30, 695 A.2d 1301, 1328 (1997); *Brown,* 969 P.2d at 326.

Our decision is consistent with the United States Supreme Court's opinion in *Tome,* 513 U.S. 150, 115 S.Ct. 696. In *Tome,* the Court held that the prior consistent statements of a child-victim in a sexual assault case were inadmissible at the defendant's trial on the grounds that the statements did not satisfy the implicit pre-motive rule the Court found in Fed.R.Evid. 801(D)(1)(b). *See id.* at 167, 115 S.Ct. 696. In so doing, however, the Court left open the possibility that statements not satisfying the pre-motive requirement of Rule 801(d)(1)(B) could still be admitted for rehabilitative purposes. Specifically, we note that the Court "intimate[d] no view ... concerning the admissibility of any of [the declarant's] out-of-court statements under [Rule 803(24), the catch-all hearsay provision,] *or any other evidentiary principle.*" *Id.* at 166, 115 S.Ct. 696 (emphasis added).

Moreover, we find no support for the proposition that the drafters of Rule 801(d)(1)(B) intended to preclude the generally accepted nonhearsay use of prior consistent statements for rehabilitative purposes. Whereas the drafting committee announced its intention to depart from the preexisting common law in adopting several other rules, no such comment follows CRE 801(d)(1)(B). *See, e.g.,* CRE 607 Committee Comment (abandoning the common law rule against impeaching one's own witness); CRE 703 Committee Comment (noting a substantial deviation from the common law rules regarding bases of expert opinion testimony); CRE 704 Committee Comment (abandoning common law rule prohibiting testimony as to an ultimate issue of fact); CRE 705 Commit-

tee Comment (abandoning common law rule regarding disclosure of facts or data underlying expert opinions); CRE 803(15) Committee Comment (extending admissibility of documents affecting an interest in property beyond existing case law and statutes); CRE 804(4) (expanding the common law rule regarding admissibility of out-of-court statements of personal or family history). Therefore, we find it highly unlikely that the drafters intended to put an end to the widespread and common use of prior consistent statements for rehabilitation without expressly so indicating.

Finally, our holding is supported by a number of commentators. *See* Edward J. Imwinkelried, *Evidentiary Distinctions, Understanding the Federal Rules of Evidence* 139 (1993); 2 Charles T. McCormick, *McCormick on Evidence* § 251, at 117 (John W. Strong ed., 4th ed.1992); Daniel J. Capra, *Prior Consistent Statements and the Supreme Court,* 213 N.Y.L.J. 3, 37 (1995) (suggesting that prior consistent statements can be introduced to rehabilitate a witness whenever they are responsive to an attack on credibility); Lesley E. Daigle, *Tell Me No Timing Rule and I'll Tell You No Lies: Why a Child's Prior Consistent Statements Should Be Admissible Without a Pre–Motive Requirement—A Critique of Tome v. United States,* 17 Rev. Litig. 91, 114 (1998) (concluding that consensus view among courts is that prior consistent statements are admissible for rehabilitative purposes in response to impeachment).

Accordingly, we hold that prior consistent statements may be used for rehabilitation when a witness' credibility has been attacked, as such statements are admissible outside CRE 801(d)(1)(B).

## B.

■ We will now address the standards applicable to the admission of prior consistent statements offered outside of CRE 801(d)(1)(B) and apply these standards to the statements at issue in the instant case. Prior consistent statements offered for rehabilitative purposes are not admissible without limitation. The rehabilitative uses of such

statements are still governed by the general principles of relevancy found in CRE 401, 402, and 403.

■ In order to properly evaluate the relevancy of a prior consistent statement offered to rehabilitate an impeached witness, the trial court must determine whether the statements have some probative force bearing on the credibility of the witness beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his or her trial testimony. *See Ellis,* 121 F.3d at 919. Furthermore, the trial court must be mindful of the prohibition against the needless presentation of cumulative evidence, a danger which is, by nature, present in all cases involving the use of prior consistent statements. *See* CRE 403.

■ With these admonitions in mind, we now turn to a review of the admissibility of the statements in the instant case. A trial court has substantial discretion in deciding questions concerning the admissibility of evidence. *See People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993). Absent an abuse of this discretion, the evidentiary rulings of a trial court will be affirmed. *See People v. Quintana,* 882 P.2d 1366, 1371 (Colo.1994). Furthermore, on appeal, a party may defend the judgment of the trial court on any ground supported by the record, regardless of whether that ground was relied upon or even contemplated by the trial court. *See id.*

In the instant case, counsel for the defense strove to demonstrate that L.E.'s trial testimony was inconsistent with her March 24, 1994 statement to Officer Pino by highlighting the following discrepancies: (1) in her statement she claimed that the molestation began when she was three, while at trial she claimed it began when she was eleven; (2) in her statement she claimed that Eppens had carried her out of the house, while at trial she claimed he "dragged" her out; and (3) in her statement she said that she decided to tell her mother of the abuse when her mother demanded that she visit Eppens while he was in jail for the domestic abuse incident,

while at trial she stated that she did not know why she decided to tell her mother about the abuse. By using such tactics, the defense was attempting to call L.E.'s credibility into doubt.[6]

As such, the admission of L.E.'s prior consistent statements was necessary to give the jury an appropriately complete picture of her credibility as a witness. *See United States v. Pierre,* 781 F.2d 329, 332–33 (2d Cir.1986). Through the introduction of these statements, the prosecution sought to demonstrate that, with the exception of the few details highlighted by the defense on cross-examination, L.E.'s testimony at trial was generally consistent with the version of events she gave during her interview with Officer Pino. Accordingly, the prior consistent statements at issue here were relevant to the jury's determination of whether the impeaching statements really were inconsistent with L.E.'s trial testimony, and if so, the magnitude and seriousness of such inconsistency. *See Rubin,* 609 F.2d at 70. Eppens should not be permitted to "have his cake and eat it too" by referring to select portions of L.E.'s prior statement in order to impeach her, but leaving out large sections of the statement which demonstrate consistency in her versions of the alleged assault. *See Ellis,* 121 F.3d at 921. Therefore, the prosecution's use of L.E.'s prior consistent statements to rehabilitate her is consistent with the first common law theory discussed above, that is, the use of consistent statements to place a supposed inconsistent statement in context in order to refute the alleged inconsistency.

Furthermore, this method of rehabilitation is in accord with the rule of completeness stated in CRE 106, although not a precise use of that rule. *See Pierre,* 781 F.2d at 333. While we have previously recognized that the rule of completeness does not provide a basis for the introduction of irrelevant evidence, *see People v. DelGuidice,* 199 Colo. 41, 606 P.2d 840 (1979), where, as here, the defense attempted to discredit L.E.'s testimony in its

---

**6.** Prior inconsistent statements may be introduced not only as a method of impeaching the testimony of a witness, but also as substantive evidence. *See* § 16–10–201, 6 C.R.S. (1998).

We note that in the instant case, Eppens used L.E.'s prior inconsistent statements solely to impeach her.

entirety, her prior consistent statement to Officer Pino on March 24, 1994 was admissible to rehabilitate her. *See Tyler*, 745 P.2d at 259.

Moreover, we conclude that the probative value of L.E.'s prior consistent statements was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. *See* CRE 403. Therefore, we are satisfied that the trial court did not err in admitting L.E.'s prior consistent statements.

Furthermore, there is no evidence that the prosecution relied upon L.E.'s prior consistent statement as substantive support for its case, thereby implicating CRE 801(d)(1)(B). A comparison of the instant case and *Tome* highlights this distinction. In the case at bar, the prosecution's closing argument only referred to Officer Pino's testimony regarding L.E.'s March 24, 1994 recorded statement in order to rehabilitate L.E.'s credibility. Specifically, the prosecution stated in closing argument, "I submit to you, ladies and gentlemen, the victim, [L.E.], and her testimony has been consistent throughout. . . . Look at the consistency. What she told you is nearly word for word what she told Pino and Gutierrez." However, in *Tome*, the actual use of the prior consistent statements at Tome's trial was substantive rather than rehabilitative. *See Tome* at 165, 115 S.Ct. 696. The Court emphasized this fact in its opinion, stating that "at closing argument, the prosecution placed great reliance on the prior statements for substantive purposes, but did not once seek to use them to rebut the impact of the alleged motive." *Id.* This substantive reliance was necessitated by the child's inability to utter more than one- and two-word answers on the stand during direct and cross-examination. *See id.* at 153, 115 S.Ct. 696. Thus, the prosecution was forced to rely on the testimony of several other witnesses, including the child's babysitter and a social worker, to fill in the details of the alleged sexual assaults. This use of prior consistent statements is markedly different than the use of such statements to rehabilitate an impeached witness.

Additionally, the content of Officer Pino's testimony regarding L.E.'s prior statement was merely repetitive of her own testimony. This stands in contrast to the situation before the Court in *Tome*, where the child's prior consistent statements were used to fill in significant gaps in the details of her in-court testimony.

Therefore, we conclude that the statements in the instant case were relevant and admissible. Accordingly, we hold that the trial court did not err in admitting L.E.'s prior consistent statements in order to assist the jury in its determination of her credibility as a witness.

### IV.

In conclusion, we hold that the admission of the social worker's opinion regarding L.E.'s sincerity, although erroneous, did not constitute plain error. We further hold that the court did not err in admitting L.E.'s prior consistent statements, as they were relevant, nonhearsay statements that were admissible outside CRE 801(d)(1)(B). Accordingly, we reverse the judgment of the court of appeals and remand to that court with directions to reinstate the defendant's conviction and sentence.

Justice MARTINEZ does not participate.