19CA1502 Peo v Adamson 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1502 Mesa County District Court No. 18CR1265 Honorable Brian J. Flynn, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Larry Glenn Adamson, Defendant-Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE NAVARRO Grove and Pawar, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Philip J. Weiser, Attorney General, Rebecca A. Adams, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Sean J. Lacefield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Larry Glenn Adamson, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault. We affirm. I. Factual and Procedural History ¶ 2 Adamson and Cheryl Teany knew each other since their youth and began dating following the end of their respective marriages. In the summer of 2018, Teany was staying at Adamson’s trailer home. ¶ 3 According to Teany, she and Adamson had an altercation on June 23, 2018. After he woke up from a nap, they discussed his relationship with his children, which upset him. Adamson called Teany insulting names, and she responded by throwing water at him. Adamson began to hit Teany in the head with his fists. She then sat at the back of the trailer while Adamson went to a local convenience store. After fifteen minutes, Teany gathered her belongings and went back to her home. ¶ 4 Upon seeing the extent of her injuries in the mirror, Teany called 911. During the call, she told the dispatcher that Adamson had “beat [her] up” at his trailer and said she did not want him to “get away with this.” Deputy Michael Dixon came to her residence, took her statement, and called an ambulance. 
2 ¶ 5 Adamson gave a different account of what happened. He said that, after he fell asleep, Teany woke him up by yelling and hitting him in the head with her purse. They argued about where Teany would live if not with Adamson. He testified that she got upset after he told her to be quiet. She threw water in his face. Afterwards, Adamson told Teany that their relationship was over. After she walked out the door, Adamson heard the sound of a fence rattle and Teany yelling. He helped her inside and tended to her bleeding nose. Teany then left. Adamson denied punching her. ¶ 6 Adamson was charged with assaulting Teany. At trial, the prosecution presented testimony from Teany, Deputy Dixon, and experts who testified to the extent and nature of Teany’s injuries. The prosecution also played for the jury audio recordings of Teany’s 911 call and her interview with Deputy Dixon at her residence. ¶ 7 Adamson also testified. His theory of defense was that Teany fabricated the assault because she was having financial problems and was upset that he would not let her move in with him. ¶ 8 The jury convicted Adamson of second degree assault, and the trial court adjudicated him a habitual criminal. 
3 II. Admission of Teany’s Recorded Statements to the 911 Operator and Deputy Dixon ¶ 9 Adamson first challenges the trial court’s admission of Teany’s out-of-court statements. We perceive no error. A. Standard of Review ¶ 10 “A trial court has substantial discretion in deciding questions concerning the admissibility of evidence,” and its rulings are reviewed for an abuse of that discretion. People v. Elie, 148 P.3d 359, 362 (Colo. App. 2006). A trial court abuses its discretion if its decision was manifestly arbitrary, unreasonable, unfair, or based on an erroneous understanding or application of the law. People v. Clark, 2015 COA 44, ¶ 40. B. Applicable Law ¶ 11 Hearsay is a statement other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. CRE 801(c). It is inadmissible unless permitted by a hearsay exception, such as an excited utterance. People v. Phillips, 2012 COA 176, ¶ 61; CRE 802; CRE 803(2). ¶ 12 A statement is not hearsay if “[t]he declarant testifies . . . and is subject to cross-examination concerning the statement, and the 
4 statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.” CRE 801(d)(1)(B). When admitted under this rule, prior statements are substantive evidence. People v. Eppens, 979 P.2d 14, 20 (Colo. 1999) (Eppens II). ¶ 13 CRE 801(d)(1)(B), however, “was not intended to provide the exclusive avenue for the introduction of prior consistent statements.” Id. at 21. Prior consistent statements may also be admissible to rehabilitate a witness whose credibility has been attacked. Id.; see Clark, ¶ 124. When admissible for this purpose, the statements are not hearsay. See Eppens II, 979 P.2d at 20. C. Analysis ¶ 14 At trial, the prosecution sought to introduce recordings of Teany’s 911 call and her interview with Deputy Dixon. The trial court overruled Adamson’s hearsay objections, reasoning that both recordings were admissible as excited utterances. ¶ 15 On appeal, Adamson challenges the court’s rulings that the recordings qualified as excited utterances. We need not decide whether the court was correct, however, because we agree with the People that the recordings were admissible as prior consistent 
5 statements for rehabilitation. See People v. Pernell, 2014 COA 157, ¶¶ 35-37 (Pernell I) (holding that, although the trial court erred in admitting statements as excited utterances, reversal was not required because they were admissible as prior consistent statements to rehabilitate a witness’s credibility), aff’d on other grounds, 2018 CO 13 (Pernell II); People v. Garcia, 2012 COA 79, ¶ 62 (noting that appellate courts may affirm a trial court’s evidentiary rulings on any ground supported by the record, even if not articulated or even considered by the trial court). ¶ 16 Defense counsel attacked Teany’s credibility throughout trial. On cross-examination, defense counsel asked Teany about her “acrimonious” divorce, whether she was upset that she was not awarded spousal maintenance, if she made a “pretty limited income,” and whether she remembered Adamson telling her that they would not be living together. During a bench conference and in response to the prosecutor’s relevance objection to questions about Teany’s divorce, defense counsel explained that “it goes to her motive and credibility” and that “she felt somewhat spurned” because she was not receiving spousal maintenance and Adamson refused to let her move in with him. 
6 ¶ 17 Defense counsel also highlighted alleged inconsistencies between Teany’s direct-examination testimony and her statements to Deputy Dixon. For instance, defense counsel attempted to elicit Teany’s admissions that she had not told Deputy Dixon that (1) she and Adamson were arguing “about anything related to [his] family”;1 (2) her phone was broken during the assault; (3) she suffered certain bruising as a result of the assault; and (4) Adamson had hit her with both fists. ¶ 18 Defense counsel repeated these challenges to Teany’s credibility during closing argument. Counsel argued that Adamson “was helping [Teany] out with her bills” after “a pretty heart-wrenching divorce,” she wanted to move in with him but was “now suddenly being dumped again,” and “that’s when the argument happened.” Counsel also repeatedly encouraged the jury to “think about what [Teany] did and did not say to Deputy Dixon.” Specifically, counsel said, “Do you hesitate when you think about Teany? And folks, she did have many inconsistencies in her 1 Defense counsel was mistaken about this. In her interview with the deputy, Teany did mention that she had argued with Adamson about his family immediately before the assault. 
7 testimony. A lot of things she said on the stand that she didn’t ever say to Deputy Dixon. You have that recording; you have that audio.” Similarly, counsel argued that Teany did not mention certain details in the 911 call that she mentioned in her testimony, and counsel encouraged the jury to listen to the 911 recording too. ¶ 19 Given these comprehensive attacks on Teany’s credibility, the 911 recording and Teany’s recorded statements to Deputy Dixon were admissible as prior consistent statements to rehabilitate her. See Eppens II, 979 P.2d at 22-23; see also Pernell I, ¶ 39 (recognizing that defense counsel’s vigorous cross-examination of the witness about her version of events and her prior statements was “precisely the kind of attack on a witness’s credibility that allows for the introduction of prior consistent statements to rehabilitate that witness”); Elie, 148 P.3d at 362 (“[I]f the impeachment is general and not limited to specific facts, then the jury should have access to all the relevant facts, including consistent and inconsistent statements.”); People v. Tyler, 745 P.2d 257, 259 (Colo. App. 1987) (The victim’s consistent statements in the police report were relevant because, after a general impeachment, her credibility was at issue and “the jury should have 
8 access to all the relevant facts, including consistent and inconsistent statements.”). Although the prior statements were admitted before Teany was cross-examined, this evidence would have been admissible after defense counsel’s cross-examination, “rendering harmless any error in its premature admission.” Pernell I, ¶ 41. ¶ 20 Adamson argues that this case is distinguishable from Eppens II because the prosecution offered Teany’s statements as substantive evidence (i.e., as excited utterances). But, while it is true that the prosecution offered, and the trial court admitted, both recordings as substantive evidence, that fact does not distinguish this case from Eppens II. ¶ 21 In that case, too, the trial court admitted the out-of-court statements as substantive evidence — there, under CRE 801(d)(1)(B). See Eppens II, 979 P.2d at 16; People v. Eppens, 948 P.2d 20, 25 (Colo. App. 1997) (Eppens I), rev’d on other grounds, Eppens II. Still, our supreme court found no error because the prior consistent statements were admissible for rehabilitative purposes and used by the prosecution for rehabilitative purposes. See Eppens II, 979 P.2d at 22-23 (holding that the trial court did 
9 not err by admitting the prior consistent statements “as they were relevant, nonhearsay statements that were admissible outside CRE 801(d)(1)(B)”). The supreme court explained that, given the defense’s attacks on the witness’s credibility, the admission of the witness’s prior consistent statements “was necessary to give the jury an appropriately complete picture of her credibility” and “there is no evidence that the prosecution relied upon [the witness’s] prior consistent statement as substantive support for its case, thereby implicating CRE 801(d)(1)(B).” Id. In fact, the prosecutor in closing argument urged the jury to “[l]ook at the consistency” in what the victim said on the stand and what she said in her prior statements. Id. at 23. ¶ 22 Likewise, divisions of this court have discerned no error in the admission of prior consistent statements where they were admissible for rehabilitative purposes, even where the trial court had admitted them for substantive purposes. See Pernell I, ¶¶ 35-
41 (admitted as excited utterances); People v. Miranda, 2014 COA 102, ¶¶ 13, 20 (admitted under section 13-25-129, C.R.S. 2020, and for rehabilitation). The upshot of those cases and Eppens II is that, regardless of whether the evidence was improperly admitted as 
10 substantive evidence, no error occurred if the evidence was admissible for rehabilitative purposes and used for those purposes. ¶ 23 In this case, the prosecution did not use Teany’s prior statements as substantive evidence to fill in gaps from the trial testimony. In that regard, this case is unlike Tome v. United States, 513 U.S. 150 (1995), on which Adamson relies. There, the prosecution had to use out-of-court statements as substantive evidence of the charged crimes because the minor victim was unable to utter more than “one- and two-word answers” on direct examination. Id. at 153, 165. In contrast, the prosecution in this case primarily used the out-of-court recordings to support Teany’s credibility as a witness. See also Eppens II, 979 P.2d at 23 (distinguishing Tome). On direct examination, the prosecutor elicited testimony from Teany that was largely consistent with what she reported to the 911 operator and Deputy Dixon, apart from minor discrepancies related to the timing of when Adamson hit her and when she called 911. ¶ 24 Importantly, the prosecutor in closing argument emphasized the consistency between Teany’s testimony and the recordings. The prosecutor pointed to details that Teany “was consistent on 
11 throughout,” in that she mentioned them at trial, in the 911 call, and in her interview with Deputy Dixon. More than once, and similar to what happened in Eppens II, the prosecutor argued that various discrepancies between Teany’s testimony and her out-of-
court statements were insignificant and that “the salient details have not changed. The important details with [Teany] have not changed.” See id. at 22 (“[T]he prosecution sought to demonstrate that, with the exception of the few details highlighted by the defense on cross-examination, [the victim’s] testimony at trial was generally consistent with the version of events she gave during her interview with Officer Pino.”). Thus, as in Eppens II, the prosecution here used Teany’s prior statements to reinforce what she testified to at trial. See id. at 23. ¶ 25 Given all this, we conclude that the 911 recording and the recorded statements to Deputy Dixon were admissible.2 2 Adamson notes that the trial court did not give an instruction limiting the jury’s use of this evidence to assessing Teany’s credibility. That was also true, however, in Eppens II, Pernell I, and Miranda. And Adamson points to no authority requiring such a limiting instruction where evidence is admitted for rehabilitation. 
12 III. Jury’s Unfettered Access to the 911 Recording ¶ 26 Adamson next contends that the trial court erred by allowing the jury unfettered access to the 911 recording during deliberations. We do not discern reversible error. A. Standard of Review ¶ 27 Control over the use of exhibits during jury deliberations is within the trial court’s discretion. DeBella v. People, 233 P.3d 664, 666 (Colo. 2010). We will not disturb a trial court’s refusal to exclude or otherwise limit the use of an exhibit absent an abuse of that discretion. Id. at 667. ¶ 28 Adamson preserved this issue. Accordingly, we review any error for nonconstitutional harmless error. See id. Under this standard, we reverse only if an erroneous ruling substantially influenced the verdict or affected the fairness of the trial. See id. B. Analysis ¶ 29 Generally, a jury is permitted to review in the jury room all exhibits received into evidence, subject to the trial court’s discretion to order otherwise. See Frasco v. People, 165 P.3d 701, 703 (Colo. 2007). That is, “control over the use of exhibits during jury deliberations in criminal proceedings must remain firmly within the 
13 discretion of the court,” and a trial court should take steps to ensure that juries are not permitted to use exhibits in a manner that is unfairly prejudicial to a party. Id. at 704. ¶ 30 In particular, a court should be cautious when permitting a jury to rehear portions of testimony and “exhibits substituting for trial testimony.” Rael v. People, 2017 CO 67, ¶ 22. “[T]he reason trial courts have an obligation, at least where prompted to do so by a party, to exercise discretion in permitting testimonial exhibits to be viewed by deliberating juries is to guard against their being given undue weight or emphasis . . . .” Ray v. People, 2019 CO 21, ¶ 16. ¶ 31 During the jury instruction conference in this case, defense counsel tendered an instruction seeking to limit the jury’s use, during deliberations, of the audio recordings of the 911 call and Teany’s interview with Deputy Dixon. The trial court originally agreed to give the defense’s proposed instruction with respect to both the 911 call and the interview. After further argument from the prosecutor, however, the court decided to limit the jury’s access to the recording of the interview but not the 911 recording. Defense counsel then withdrew the request to limit the jury’s use of the 
14 recording of the interview. The court thus imposed no such limitation as to either recording. ¶ 32 On appeal, Adamson argues that the trial court erred by not limiting the jury’s access to the 911 recording. He does not, however, challenge the court’s failure to limit the jury’s access to Teany’s interview with Deputy Dixon. ¶ 33 Teany’s 911 call and interview with Deputy Dixon were largely consistent. During the 911 call, she said, “I was at my boyfriend’s house, and he beat me up, and I can’t see out of my eye.” When the operator asked if Teany needed an ambulance, she responded, “I don’t want him to get away with this.” She continued, “I have ice on my eye. It’s very severely black and blue . . . I’m blowing blood out my nose, and there’s blood all over inside of his damn trailer.” ¶ 34 Likewise, during her interview with Deputy Dixon, Teany said Adamson “beat the shit out of [her]” while calling her a “fucking bitch” and that he did so because she dumped cold water on him. She also explained the extent of her injuries and why she was conflicted in calling the police, explaining, “I love this man but I can’t allow him to do this to me, I can’t.” 
15 ¶ 35 The only substantive differences in the two recordings were Teany’s statements regarding what time the assault occurred. Indeed, Adamson does not argue that the two recordings were different in a significant way. ¶ 36 Hence, the jury had unfettered access to a recording (the interview) that was largely cumulative of the 911 recording. Any error in permitting the jury unfettered access to the 911 call was, therefore, harmless. Cf. People v. Mapps, 231 P.3d 5, 11 (Colo. App. 2009) (concluding that any error in admitting the evidence was harmless because it was cumulative of other evidence). So reversal is not warranted. IV. Habitual Criminal Counts ¶ 37 Adamson’s last contention is that the trial court denied his right to a jury trial on the habitual criminal counts when it found that he had three prior felony convictions and sentenced him to four times the maximum in the presumptive range. We disagree. ¶ 38 “Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) 
16 (emphasis added). Our supreme court recognized the continued vitality of this prior conviction exception in Lopez v. People, 113 P.3d 713, 723 (Colo. 2005). Its holding is dispositive. See People v. Moore, 226 P.3d 1076, 1089-90 (Colo. App. 2009); People v. Nunn, 148 P.3d 222, 224-28 (Colo. App. 2006). ¶ 39 Relatedly, we disagree with Adamson that Alleyne v. United States, 570 U.S. 99 (2013), alters the analysis. The Court in that case did not abolish the prior conviction exception; instead, the Court expressly declined to revisit that exception. See id. at 111 n.1; People v. Session, 2020 COA 158, ¶ 27 (rejecting the notion that Alleyne did away with the prior conviction exception). V. Conclusion ¶ 40 The judgment is affirmed. JUDGE GROVE and JUDGE PAWAR concur.