22CA1829 Peo v Hall 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1829
City and County of Dever District Court No. 21CR7224
Honorable Adam J. Espinosa, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Charles Hall,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Freyre and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Patrick Galligan, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Charles Hall, appeals the judgment of conviction entered after a jury found him guilty of one count of third degree assault.  We affirm.

## I.    Background

¶ 2    Hall and the victim had an on-again-off-again relationship for several years before they married in September 2021.  They lived together with the victim's eleven-year-old developmentally delayed daughter.

¶ 3    According to the victim, she and Hall had an altercation one evening in December 2021.  The victim's daughter was in her room while the victim and Hall watched television together in their bedroom.  While the victim was trying to find a picture of her sister on her phone, Hall saw a photo of the victim's "butt" and "immediately went off," accused her of being a "whore and a trick," and "sending [the photo] to other men."  Hall was yelling, holding the victim's phone, and then left their bedroom.  When he returned, he "strangled" the victim by "put[ting] his hands on [her] neck" and "threw [her] down on the bed."  She felt a "sharp pain" and urinated on herself.

¶ 4    After "at least . . . a minute," the victim was able to push Hall away, and she went into the kitchen.  Hall followed her and "grabbed [her] by [her] arm and dr[agged] [her] through the kitchen, back through the hallway and into the bedroom."  The victim's daughter saw them, said "Mommy," and began crying; the victim told her to go back to sleep.  Back in the bedroom, Hall and the victim went to sleep.  Hall kept the victim's phone and his "leg and foot [was] on her the entire night."

¶ 5    In the morning, the victim woke up with her alarm, grabbed her phone, and went to work.  When she returned to the apartment, she noticed Hall was there and called the police.

¶ 6    The victim's daughter corroborated her mother's account of what happened by testifying that when she woke up, she heard Hall and her mother fighting and saw Hall dragging her mom "in the ground."  The remainder of the victim's daughter's testimony was limited due in large part to her inability to remember much of what happened that evening.

¶ 7    Hall's account of the incident was different.  He testified at trial that while watching a movie he saw a "nude picture . . . of [the victim's] breasts" on her phone.  In response to seeing the photo he

gave her a "45-day ultimatum" because they had "just gotten married," and she "got irate." He testified that he never raised his voice. They finished the movie and started a second movie, and during this time the victim's daughter was going back and forth between where they were in the living room and her bedroom. Without finishing the second movie, everyone went into their respective bedrooms to go to bed. In their bedroom, Hall and the victim had sex, and the victim became upset when Hall told her this would be their last time. She got up and went into the hallway, where she was "loud, crying," and the victim's daughter woke-up. Hall testified that he never raised his voice and told the victim's daughter that the victim had "a headache" and to go back to sleep, which she did. Hall denied that he or the victim were ever in the kitchen. He denied ever applying pressure to the victim's neck, dragging her, or taking her phone. And he denied doing anything that would have caused the victim pain or injury or having any physically violent confrontation in front of the victim's daughter.

¶ 8    Hall was charged with second degree assault, third degree assault, and child abuse. At trial, the prosecution presented

testimony from the victim, her daughter, an officer who spoke to the victim when she called the police, and a strangulation expert.

¶ 9 Hall also testified. His theory of defense was that the victim fabricated the assault because she was upset that he wanted to end their relationship.

¶ 10 The jury convicted Hall of third degree assault but acquitted him of the remaining charges. The district court sentenced Hall to probation.

## II. Discussion

¶ 11 Hall challenges the district court's admission of out-of-court statements the victim made to law enforcement, arguing that the statements were inadmissible hearsay that improperly bolstered her credibility. Because we conclude that the statements were admissible under the common law as prior consistent statements for rehabilitative purposes, we perceive no error.

### A. Standard of Review

¶ 12 We review a district court's evidentiary ruling for an abuse of discretion. *People v. Elie*, 148 P.3d 359, 362 (Colo. App. 2006). A court abuses its discretion if its decision was manifestly arbitrary, unreasonable, unfair, or based on an erroneous understanding or

application of the law.  *People v. Pernell*, 2014 COA 157, ¶ 30, *aff'd on other grounds*, 2018 CO 13.

## B.    Applicable Law

¶ 13    Hearsay is a statement other than one made by the person testifying, offered to prove the truth of the matter asserted.  CRE 801(c).  Hearsay is inadmissible unless it falls under one of the exceptions to the hearsay rule.  CRE 802.

¶ 14    A statement is not hearsay if "[t]he declarant testifies . . . and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."  CRE 801(d)(1)(B).  When admitted under this rule, prior statements are substantive evidence.  *People v. Eppens*, 979 P.2d 14, 20 (Colo. 1999).

¶ 15    Prior consistent statements may also be admissible under the common law — not for their truth, but to rehabilitate a witness whose credibility has been attacked.  *Id.* at 21 ("Rule 801(d)(1)(B) was not intended to provide the exclusive avenue for the introduction of prior consistent statements."); *see People v. Clark,*

2015 COA 44, ¶ 124.  Statements admitted for this purpose need not comply with the requirements of CRE 801(d)(1)(B).

¶ 16   Under either theory, the admissibility of such statements is contingent on a showing of their relevance and probative value. CRE 401-403; *Clark*, ¶ 125.

C.   Analysis

¶ 17   At trial, the prosecution sought to introduce statements the victim made to a law enforcement officer about what had happened as excited utterances or as prior consistent statements under CRE 801(d)(2)(B).  The district court overruled defense counsel's objections in part.  The court reasoned that while the statements did not meet the requirements of an excited utterance, they were admissible as prior consistent statements under CRE 801(d)(2)(B) because they were statements made "prior to her interrogation at trial and prior to her opportunity or motive to fabricate her testimony."

¶ 18   On appeal, Hill challenges the admissibility of the statements under CRE 801(d)(2)(B).  But even assuming without deciding that the district court erred by admitting the statements under this rule, the statements were admissible under the common law as prior

6

consistent statements for rehabilitation purposes. *See People v. Garcia*, 2012 COA 79, ¶ 62 (noting that appellate courts may affirm a district court's evidentiary rulings on any ground supported by the record, even if not articulated or even considered by the district court); *cf. Pernell*, ¶¶ 35-37 (holding that, although the district court erred by admitting the statements as excited utterances, reversal was not required because they were admissible as prior consistent statements to rehabilitate a witness's credibility).

¶ 19    Hall's theory of the case — which put the victim's credibility at the heart of the issues to be decided at trial — was that he never choked, dragged, or hurt the victim, and that her claims to the contrary were fabricated. To this end, defense counsel made efforts throughout the trial to attack the victim's credibility. For example, during opening statement, defense counsel told the jury that the evidence would show that the victim "was extremely upset that [Hall] wanted to end the relationship" and accused him "of these horrible things, putting hands on her, choking her and pulling her," but "[t]here will be zero evidence presented that supports any of that." Defense counsel asserted, "[Hall] is an innocent man who is here today because someone who he had been in a relationship

7

with and had trusted became upset that he wanted to end that relationship."

¶ 20    While cross-examining the victim, defense counsel questioned her extensively regarding the events at issue, asking her to "describe exactly what you're saying happened as far as the — you've called it dragging," and saying, "I'm just trying to understand exactly how — how you're saying this happened." Defense counsel also attempted to undermine the victim's credibility on cross-examination based on some of the statements she made during direct examination:

> You told us all [during direct examination] that [Hall] did work [that day], and we know that he did not work. So is it your testimony here today that on days like that, days when he didn't work but you did, that he would never drive [the victim's child] anywhere?

¶ 21    Defense counsel's attempts to undermine the victim's credibility extended to the cross-examination of other witnesses as well. For example, after the expert said that "[l]oss of bladder control suggests that someone had the flow of oxygen to their brain interrupted for about 15 seconds," defense counsel responded, "But, again, that depends on the starting — starting point

assumption that they were strangled, and that's — that is what caused the loss of bladder control." And counsel said, "I'm asking, is there anything that you can look at that would suggest it's less likely, even to the slightest degree, that that reported strangulation did not occur." Moreover, during counsel's cross-examination of the victim's daughter, defense counsel insinuated that her testimony was contrived, asking, "Have you talked to your mom before about what you were going to talk about in court today?"

¶ 22 Given these thematic attacks on the victim's credibility, the statements the victim made to law enforcement were admissible as prior consistent statements to rehabilitate her. *See Eppens*, 979 P.2d at 22-23; *see also People v. Miranda*, 2014 COA 102, ¶¶ 18-20 (concluding that victim's consistent statements to a forensic interviewer were admissible as prior consistent statements where defense counsel "generally attacked her credibility and motivation"). Allowing the challenged statements gave the jury an appropriately complete picture of the victim's credibility as a witness given the breadth of Hall's claims that she fabricated her allegations against him. *See Eppens*, 979 P.2d at 22. For this reason, the statements had probative value beyond the mere fact that the victim had said

the same thing on a prior occasion. *See id.* at 23. And the prosecution did not rely on the statements the victim made to the officer as substantive evidence. Rather, the prosecution relied on the victim's own trial testimony and argued her consistency across her statements, both at trial and to the officer on scene, was probative of her credibility.

¶ 23 Under these circumstances, we conclude that the district court would have acted well within its discretion had it admitted all the challenged statements as prior consistent statements for rehabilitative purposes. And we can affirm on this alternative basis, which is supported by the record. *See Pernell,* ¶ 36 (noting that reversal is not required where statements are admissible on an alternative basis).

### III. Disposition

¶ 24 The judgment is affirmed.

JUDGE FREYRE and JUDGE LUM concur.