The REGENTS OF the UNIVERSITY OF COLORADO, and Judith Albino, President of the University of Colorado, Plaintiffs–Appellees,

v.

Natalie MEYER, Secretary of State, Defendant–Appellant,

and

Vern Bickel, Chairman, Colorado Union of Taxpayers, and Colorado Union of Taxpayers, Defendants.

No. 93CA2006.

Colorado Court of Appeals, Div. III.

Feb. 9, 1995.

Rehearing Denied March 9, 1995.

Certiorari Denied Aug. 14, 1995.

Office of University Counsel, Joanne M. McDevitt, Stephen Zweck–Bronner, Denver, for plaintiffs-appellees.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie Rottersman, Asst. Atty. Gen., Denver, for defendant-appellant.

Opinion by Judge HUME.

Defendant, Secretary of State ·Natalie Meyer, appeals the district court's judgment reversing her order in which she ruled that plaintiffs, the University of Colorado (C.U.) and its president, Judith Albino, had violated the Campaign Reform Act (Act) by printing and disbursing election materials in an administrative publication. We affirm.

Plaintiffs regularly prepare a monthly newsletter and distribute it in the pay envelopes of all 19,000 C.U. employees. On September 30, 1992, the newsletter comprised the front and back of one page and contained a paragraph addressing the ramifications of a proposed constitutional amendment concerning taxation (Amendment One). It also contained a paragraph discussing the Great Outdoors Colorado (GO Colorado) initiative. Both issues were to be presented to the electorate in November.

Defendant received two complaints alleging that the newsletter violated the Act prohibiting the use of public funds to urge voters to vote for or against any issue before the electorate.

Pursuant to her statutory authority, defendant set a date for a public hearing and sent all concerned parties notice thereof. The complainant challenging both the Amendment One and GO Colorado paragraphs responded by letter stating that he would not attend. The other complainant, whose challenge was limited to the Amendment One information, filed a brief and participated in the hearing.

Defendant ultimately determined that both paragraphs of plaintiffs' newsletter violated the Act and that, even if the newsletter fell within an exemption permitted by the Act, public funds expended relating to the contested portions exceeded the $50 limitation provided by the exemption. Defendant then ordered the matter to be sent to the Colorado Attorney General's office for further action and relief pursuant to statute.

Plaintiffs sought judicial review in the district court. The court reversed defendant's order, finding that the newsletter conformed to the exemption requirements provided in the Act. Defendant now appeals the district court's decision.

I.

Defendant first contends that the court erred in concluding that the challenge to the newsletter was confined to the paragraph concerning Amendment One. We perceive no error.

In a proceeding for judicial review of agency action, the district court is required to set aside such action that it finds to be either unsupported by the evidence or contrary to law, and it is for the court to determine all questions of law, interpret the applicable statutes and state regulations, and apply such interpretations to the facts. *Colorado Department of Social Services v. Davis*, 796 P.2d 494 (Colo.App.1990). We are bound by the same principles. *Guildner Way, Inc. v. Board of Adjustment*, 35 Colo.App. 70, 529 P.2d 332 (1974).

Here, the participating complainant entered into the hearing record a C.U. professor's testimony that the paragraph on Amendment One offended him and that he considered it an attempt to influence his vote. He then stated that the GO Colorado information did not similarly concern him.

No one appeared at the hearing to represent the other complainant's concerns, and no evidence was presented regarding the GO Colorado paragraph in the newsletter. Nor can we conclude that the contents of the newsletter explicitly advocate that its readers vote either for or against the GO Colorado amendment.

Therefore, since there was no evidence in the record to support defendant's conclusion of law that both paragraphs of the newsletter violated the Act, the district court did not err in limiting the scope of its review to Amendment One information.

## II.

■ Defendant next asserts that the court erred when it construed the Act to permit a policy-maker to expend up to $50 of public funds to express the official's personal opinion on an issue. We are not persuaded.

■ Courts are authorized to interpret a legislative enactment, and they are not bound by an agency decision that misapplies or misconstrues that law. *El Paso County Board of Equalization v. Craddock,* 850 P.2d 702 (Colo.1993).

Colo.Sess.Laws 1991, ch. 104, § 1–45–116(1)(a), at 604, as then in effect, provided, in part:

> No agency, department, board, division, bureau, commission, or council of the state or any political subdivision thereof shall make any contribution or contribution in kind ... to urge electors to vote in favor of or against any issue before the electorate. However, a member or employee of any such agency ... who has policy-making responsibilities may expend not more than fifty dollars of public moneys in the form of letters, telephone calls, or other activities incidental to making himself available to the press or public for the purpose of responding to questions about any such issue *or to express his opinion on any such issue.* (emphasis added)

■ In construing a statute, the court's primary task is to ascertain and give effect to the intent of the General Assembly; to do so, the court must first look to the statutory language. *Moody v. Corsentino,* 843 P.2d 1355 (Colo.1993).

Here, the statutory language supports the district court's conclusion that § 1–45–116, as then in effect, created an exemption in situations in which a policy-maker responds to a specific inquiry and those in which he or she wishes to express a personal opinion about an issue before the electorate. *See Bloomer*

*v. Board of County Commissioners,* 799 P.2d 942 (Colo.1990) (the General Assembly's use of the word "or" generally is indicative of two different categories). Albino's status as a policy-maker has not been challenged in these proceedings.

Additionally, the statute's subsequent history supports the court's determination that the phrase "incidental to" has a broader meaning than that suggested by defendant. *See Charnes v. Boom,* 766 P.2d 665 (Colo. 1988) (if a statute is ambiguous, the court must determine the intent of the General Assembly by considering the statute's legislative history, problems addressed by the legislation, and statutory remedies created to cure problems). *See also BQP Industries, Inc. v. State Board of Equalization,* 694 P.2d 337 (Colo.App.1984) (subsequent legislative pronouncement of intent may be considered in construing statute in question).

In 1994, the General Assembly amended the Act so that the relevant portion now reads:

> However, a member or employee of any such agency ... may respond to questions about any such issue, if the member ... has not solicited the question. A member or employee ... who has policy-making responsibilities may expend not more than fifty dollars of public moneys in the form of letters, telephone calls, or other activities incidental to expressing his or her opinion on any such issue.

Section 1–45–116(1)(a), C.R.S. (1994 Cum. Supp.).

The discussion surrounding the 1994 amendment makes it clear that both the previous and current versions of § 1–45–116 were intended to permit a policy-maker to utilize up to $50 of public funds to express his or her personal opinion on an issue before the electorate. *See* Hearings on S.B. 94–171 before the Subcommittee of the House Education Committee, 59th General Assembly, Second Session (March 9, 1994).

The section was amended, including two sentences designed to clarify that only an employee with policy-making responsibility is permitted to expend public funds up to the $50 limit in expressing an opinion about a

pending ballot issue. *See* Hearing on S.B. 94–171 before its second reading to the House, 59th General Assembly, Second Session (March 22, 1994).

Therefore, the court did not err in interpreting the meaning of the applicable exemption in evaluating plaintiffs' newsletter.

## III.

■ Finally, defendant argues that even if the exemption applies to the newsletter, the court erred when it concluded that the contested portion conformed to the $50 limit. We perceive no error.

At the hearing, C.U.'s Director of Publications Service testified that the total cost of printing the newsletter on two sides of one page was $688.01 and that, even if the challenged paragraph had been deleted, there would have been no difference in the cost, because a second side would still have been necessary to accommodate the remaining portions of the letter.

Additionally, the evidence established that the cost of reimbursing the word processor's time for typing the challenged paragraph was less than $1. Although final arguments at the hearing made reference to the possibility of contributions in kind that may have been provided by auxiliary staff in folding and stuffing the newsletter into the employee pay envelopes, neither party presented any evidence about the value of such contributions.

Therefore, since there was no competent evidence in the record to support defendant's conclusion that the amount spent in printing and distributing the portion of the letter directed toward Amendment One was more than $50, the district court did not err in reversing that determination.

The judgment is affirmed.

JONES and TAUBMAN, JJ., concur.