**LARIMER COUNTY COMMISSIONERS, Courtlyn W. Hotchkiss, Daryle W. Klassen, and M.J. Mekelburg, Plaintiffs–Appellees and Cross–Appellants,**

v.

**The SECRETARY OF STATE OF the State of COLORADO, Defendant–Appellant and Cross–Appellee,**

and

**Larry W. Sarner, Defendant and Cross–Appellee.**

No. 94CA1103.

Colorado Court of Appeals,
Div. IV.

Dec. 7, 1995.

Rehearing Denied Jan. 25, 1996.

George H. Hass, County Attorney, Ralph B. Harden, Assistant County Attorney, Larimer County Attorney's Office, Fort Collins, for Plaintiffs–Appellees and Cross–Appellants.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Laurie Rottersman, Assistant Attorney General, Alesia M. McCloud–Chan, Assistant Attorney General, Denver, for Defendant–Appellant and Cross–Appellee.

Roberts & Associates, James M. Roberts, Fort Collins, for Defendant and Cross–Appellee.

Opinion by Judge TAUBMAN.

Defendant the Secretary of State of Colorado appeals, and plaintiffs, the Larimer County Commissioners, Courtlyn W. Hotchkiss, Daryle W. Klassen, and M.J. Mekelburg (Commissioners), cross-appeal from a judgment of the trial court interpreting various provisions of the Campaign Reform Act. We conclude that the Secretary of State lacked jurisdiction to hear a claim under § 1–45–113(2), C.R.S. (1995 Cum.Supp.) of that Act, as then in effect. Accordingly, we affirm in part and reverse in part.

In August 1990, the Commissioners called a referendum for the citizens of Larimer County to vote on a sales and use tax to finance the construction and operation of additional correctional facilities. Prior to the general election in November, the Commissioners hired a public relations firm to assist in providing information to the electorate regarding the proposed tax.

In preparing this information, the Commissioners were governed by the Campaign Reform Act enacted in 1974 and currently codified at § 1–45–101, et seq., C.R.S. (1995 Cum.Supp.). The stated purpose of the Act is to "promote public confidence in government through a more informed electorate." Section 1–45–102, C.R.S. (1995 Cum.Supp.).

To effectuate this purpose, the Act specifies the circumstances and manner in which

candidates, other persons, and political committees must disclose contributions received and expenditures made for the purpose of supporting or opposing candidates or issues in an election. Further, § 1–45–103(10), C.R.S. (1995 Cum.Supp.) defines a "political committee" as:

> any two or more persons who are elected, appointed, or chosen or who have associated themselves or cooperated for the purpose of accepting contributions or contributions in kind or making expenditures to support or oppose a candidate for public office at any election or seek to influence the passage or defeat of any issue.

Here, the Commissioners' actions were specifically governed by Colo.Sess.Laws 1988, ch. 33, § 1–45–116(1)(a), which, in 1990, provided in pertinent part:

> No agency, department, board, division, bureau, commission, or council of the state or any political subdivision thereof shall ... expend public moneys from any source, or make any contributions in kind, to urge electors to vote in favor of or against any issue before the electorate.

Cf. § 1–45–116(1)(a), C.R.S. (1995 Cum. Supp.). However, also applicable then was Colo.Sess.Law 1988, ch. 33, § 1–45–116(b)(I) which further provided that:

> Nothing in this subsection (1) shall be construed as prohibiting an agency, department, board, division, bureau, commission, or council of the state or any political subdivision thereof from expending public moneys or making contributions in kind to dispense fair and balanced information on any issue of official concern before the electorate.

Cf. § 1–45–116(1)(b)(I), C.R.S. (1995 Cum. Supp.).

The Commissioners reviewed and approved the materials urging electors to vote for the proposed tax, and paid approximately $20,000 of public money for both the services of the firm and the advertising and printing costs. The Commissioners did not file a statement of organization as a political committee, did not file any reports of contributions or contributions in kind, and did not make any type of financial disclosure to ei-

ther the Secretary of State or the Larimer County clerk and recorder.

Subsequently, two Colorado citizens filed a complaint with the Secretary of State alleging that the Commissioners had violated § 1–45–116 by not presenting all the alternatives to the voters and by not presenting the information in a "fair and balanced" manner. The complaint was filed against the Commissioners individually and also collectively as the Board of County Commissioners of Larimer County.

Pursuant to § 1–45–113(1)(e), C.R.S. (1995 Cum.Supp.), the Secretary of State appointed an Administrative Law Judge (ALJ) to hear the case. The ALJ first determined that the Secretary of State had jurisdiction over the complaints and that they had been filed in a timely manner. The ALJ then concluded that the Commissioners had expended public money in violation of § 1–45–116 because the Commissioners' campaign materials did not present information in a "fair and balanced" manner. He further found that the Commissioners did not constitute a political committee and were, therefore, not required to file any reports. However, the ALJ did not impose any sanctions on the Commissioners.

The Commissioners appealed the decision of the ALJ to the Secretary of State pursuant to § 24–4–105(14), C.R.S. (1995 Cum. Supp.) and § 1–45–113(1)(e). The Secretary of State affirmed the findings of the ALJ, except that she concluded the Commissioners were a political committee within the meaning of § 1–45–103(10), C.R.S. (1995 Cum. Supp.)

On July 25, 1992, the Commissioners filed a complaint for judicial review of agency action under the state Administrative Procedure Act (APA), § 24–4–106, C.R.S. (1995 Cum.Supp.). The Secretary of State counterclaimed, as did the two citizens, requesting, *inter alia*, a full accounting of the money improperly used, reimbursement of those funds by the Commissioners from personal funds, and that a public hearing be required before the County Commissioners could expend public money to publish similar information in the future.

On May 16, 1994, the trial court entered judgment affirming the findings of the Secretary of State but dismissing the counterclaims of the Secretary of State and the citizens for lack of jurisdiction. The court held that its jurisdiction was limited to claims that had been presented to the administrative tribunals and that, under the Campaign Reform Act, the attorney general was required to file a separate claim to gain further relief.

## I.

On appeal, the Secretary of State contends that the trial court erred in dismissing its counterclaim. The Commissioners cross-appeal and contend: (1) the Secretary of State had no jurisdiction to hear this matter; (2) the claims under the Campaign Reform Act were not timely filed; (3) the final determination of the Secretary of State was arbitrary and capricious; and (4) the Secretary of State erred in finding the Commissioners to be a political committee. We agree with the Commissioners that the Secretary of State lacked jurisdiction to hear this matter.

■ Initially, we note that the Commissioners urge us to consider on appeal a letter sent by the Secretary of State in February 1992 concerning jurisdiction in an unrelated matter. The Commissioners assert that, in this letter, the Secretary of State acknowledged that she had no jurisdiction in a similar matter. However, the letter was not introduced at the hearing before the ALJ, and we will therefore not consider it now. *See Mountain States Telephone & Telegraph Co. v. Public Utilities Commission,* 182 Colo. 269, 513 P.2d 721 (1973).

## A.

■ The duties of the Secretary of State include hearing claims concerning alleged violations of the Campaign Reform Act. In 1990, at the time of this action, § 1–45–113(2), C.R.S. (1980 Repl.Vol. 1B) provided that: "Any person who believes a violation of this article has occurred may file a written complaint no later than sixty days after the date of the final report of a candidate or political committee with the secretary of state."

■ Our primary purpose in construing a statute is to ascertain and give effect to the intent of the General Assembly. *Moody v. Corsentino,* 843 P.2d 1355 (Colo.1993). To discern the intent of the General Assembly, we first look to the plain language of the statute. *Lakewood v. Mavromatis,* 817 P.2d 90 (Colo.1991). However, a statute that is susceptible to more than one interpretation is ambiguous, requiring the court to look beyond the mere words of the statute. *General Electric Co. v. Niemet,* 866 P.2d 1361 (Colo. 1994). Thus, when the statute is unclear, we may consider, among other things, the legislative history as indicative of legislative intent. *See* § 2–4–203, C.R.S. (1980 Repl.Vol. 1B).

■ In our view, § 1–45–113 is ambiguous because it is susceptible to more than one interpretation. It is not clear from the plain language of this statute whether the Secretary of State had jurisdiction over alleged violations of issue elections, as opposed to candidate elections. On the one hand, the statute provides that a person who believes a violation of "this article" has occurred may file a complaint, which suggests that the Secretary of State has jurisdiction over *any* provision in the article, including issue elections covered by § 1–45–116. However, that same sentence also refers specifically to the "final report of a candidate or a political committee," which seems to limit the scope of the provision to candidate elections and political committees.

Here, the statute's subsequent legislative history supports the conclusion that the provision in effect in 1990, at the time the complaint was filed, was not intended to cover issue elections. *See Charnes v. Boom,* 766 P.2d 665 (Colo.1988) (a court may consider a statute's legislative history, the problems addressed by the legislation, and statutory remedies created to cure those problems); *Regents of University of Colorado v. Meyer,* 899 P.2d 316 (Colo.App.1995) (using subsequent legislative history to interpret provisions of the Campaign Reform Act); *BQP Industries, Inc. v. State Board of Equalization,* 694 P.2d 337 (Colo.App.1984) (subse-

quent legislative pronouncement of intent may be considered in construing statute in question).

In 1991, the General Assembly amended the Campaign Reform Act by adding § 1–45–116(2)(b), C.R.S. (1995 Cum.Supp.) which provides: "Notwithstanding the provisions of paragraph (a) of this subsection (2), any person who believes a violation of section 1–45–116 has occurred may file a written complaint no later than sixty days after the appropriate election with the secretary of state."

The legislative history surrounding the 1991 amendment makes clear that the prior statute was intended to apply only to candidate elections and political committees, while the amendment was intended to add coverage of issue elections. In describing the purpose of the 1991 amendment, Representative Jerke, a bill sponsor, explained that it "tracks the law" already in effect for candidate complaints, but addresses only issue elections. *See* Hearing on S.B. 205 before the House Judiciary Committee, 58th Gen. Assembly, First Regular Session (March 26, 1991). Similarly, it was further explained in conference committee that the wording of the amendment was "lifted" from the law dealing only with candidate complaints, and "put . . . into this area of the law so it would cover issue complaints as well." *See* Conference Committee Meeting on S.B. 91–205, 58th Gen.Assembly, First Regular Session (April 9, 1991).

Thus, the legislative history demonstrates that § 1–45–113, as enacted in 1974, was intended by the General Assembly to apply only to candidate elections and political committees, and that the 1991 amendment added an enforcement procedure for issue elections that was left out of the original statute.

■ Moreover, there is a presumption that when the General Assembly amends a statute it intends to change the law. *Charnes v. Lobato*, 743 P.2d 27 (Colo.1987). This presumption may be rebutted by a showing that the General Assembly intended only to clarify an ambiguity. *Rickstrew v. People*, 822 P.2d 505 (Colo.1991). Here, however, the presumption that the General Assembly intended to change the statute is borne out by the legislative history discussed above, and

no evidence was introduced to rebut the presumption.

Accordingly, we conclude that the Secretary of State did not have jurisdiction under that statute in 1991 to hear a complaint concerning an issue election and that the findings of the ALJ and the Secretary are invalid.

### B.

■ Even if we assume the Commissioners were a political committee, the complaints submitted by the two citizens were not timely submitted and, for that reason, the Secretary of State was barred from considering them.

As a political committee, the Commissioners would have had thirty days after the election within which to file an expenditure report. Section 1–45–110, C.R.S. (1995 Cum. Supp.). A complaint must then be filed within sixty days of the filing of the report, or, if no report was filed, within sixty days from the date it should have been filed. Section 1–45–113, C.R.S. (1980 Repl.Vol. 1B).

The complaints here were both filed well outside that 90–day time frame. Thus, even *if the Commissioners were a political committee, the citizens' complaints were untimely.*

Because of our disposition of these issues, we need not address the other issues raised in the cross-appeal. Further, inasmuch as the trial court's dismissal of the Secretary's counterclaim reflects a result consistent with our analysis herein, we affirm that ruling.

That portion of the judgment dismissing the Secretary's counterclaim is affirmed. The portion of the judgment affirming the Secretary's findings is reversed, and the cause is remanded with directions that the administrative procedures against the Commissioners be dismissed.

NEY and KAPELKE, JJ., concur.