**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Dawna DAVIS, Defendant–Appellant.**

No. 07CA0595.

Colorado Court of Appeals,
Div. II.

Dec. 24, 2008.

Certiorari Denied Aug. 17, 2009.

Jonathan P. Fero, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Stephen Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Dawna Davis, appeals the judgment of conviction entered on jury verdicts finding her guilty of contributing to the delinquency of a minor and furnishing alcohol to a minor. We affirm.

## I. Background

On the evening of September 24, 2005, Davis picked up her fourteen-year-old daughter, B.W., and B.W.'s seventeen-year-old friend, M.S. Davis testified that she stopped to purchase rum for herself and for her friends, whom she intended to have over the following day. M.S. testified that B.W. asked Davis to stop and purchase alcohol. He also said that B.W. gave Davis money for the alcohol and that Davis purchased liqueur, beer, and possibly other alcohol. B.W. denied that she gave Davis money for the alcohol and testified that Davis had only purchased rum that evening.

M.S. further testified that Davis had provided him alcohol on two previous occasions at her house and that "usually we drink when I go over there," referring to Davis's home.

Davis testified that upon arriving home, she had one drink of the rum, then went to bed, and fell asleep. Thereafter, B.W. invited other friends to the house. All but one of the friends were minors. The minors sat outside the house, near Davis's hot tub, and consumed alcohol. The one adult, Brian Reynolds, purchased additional alcohol, which the minors consumed.

Davis testified that she awoke at around 1:30 a.m., went downstairs, and saw strangers in her kitchen and bottles of alcohol that she had not purchased on the counter. She said she and B.W. went upstairs to talk, and that she told B.W., "you have got to stop this," and "you need to get rid of the alcohol." She fell back asleep after deciding to deal with the incident the next day.

John W. Suthers, Attorney General, Sean A. Moynihan, Assistant Attorney General,

Davis testified that she awoke at 4 a.m. and went to work. Later that morning, one of the minors, M.S.'s sister, had not returned home. Their parents called B.W., looking for the missing girl. When the parents learned that the minors had consumed alcohol at Davis's house, they notified the police. Davis and Reynolds were charged with contributing to the delinquency of a minor. Reynolds pleaded guilty, but Davis went to trial.

On November 28, 2006, a jury found Davis guilty of the class four felony offense of contributing to the delinquency of a minor, for inducing, aiding, or encouraging M.S., a minor, to violate the minor-in-possession law. The jury also found Davis guilty of a misdemeanor for furnishing alcohol to a minor.

## II. Statutory Interpretation

Davis contends that the trial court erred in allowing the People to charge her with contributing to the delinquency of M.S., pursuant to section 18–6–701(1), C.R.S.2008. She argues that the Colorado Liquor Code, sections 12–47–101 to –1002, C.R.S.2008, as it existed at the time of her offense, prohibited the People from prosecuting her under the criminal code. We disagree.

Statutory interpretation is a question of law that we review de novo. *United Airlines, Inc. v. Indus. Claim Appeals Office*, 993 P.2d 1152, 1157 (Colo.2000). We construe statutes so as to give effect to the intent of the General Assembly. *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991); *People v. Dist. Court*, 713 P.2d 918, 921 (Colo.1986).

To discern the legislative intent, we first look at the language of the statute and give statutory words and phrases their plain and ordinary meaning. *Dist. Court*, 713 P.2d at 921. If the language is unambiguous and the intent appears with reasonable certainty, there is no need to resort to other rules of statutory construction. *Id.* If the language is ambiguous or conflicts with other provisions, we may look to the legislative history, the prior law, the consequences of a given construction, and the goal of the statutory scheme to determine legislative intent. *People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002);

*see also Larimer County Comm'rs v. Sec. of State*, 911 P.2d 698, 701 (Colo.App.1995) (using subsequent legislative history to interpret statutory provisions).

We read the statute as a whole "to give 'consistent, harmonious and sensible effect to all of its parts,'" in accordance with the presumption that the legislature intended the entire statute to be effective. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo.2005) (quoting *Bd. of County Comm'rs v. Costilla County Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo.2004)). We avoid constructions that are at odds with the legislative scheme. *Klinger v. Adams County School Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006).

We presume that the General Assembly intended a just and reasonable result. *Luther*, 58 P.3d at 1015. We avoid interpretations that lead to an illogical or absurd result. *Frazier v. People*, 90 P.3d 807, 811 (Colo.2004); *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996); *Martin v. Union Pacific R.R. Co.*, 186 P.3d 61, 65 (Colo. App.2007) (*cert. granted* June 30, 2008).

Penal "statutes are to be strictly construed in favor of a defendant." *People v. Hale*, 654 P.2d 849, 850 (Colo.1982). However, this rule should not be used to defeat the intent of the General Assembly. *Rickstrew v. People*, 822 P.2d 505 (Colo.1991) (citing *Dist. Court*, 713 P.2d at 922).

A person commits the offense of contributing to the delinquency of a minor if he or she "induces, aids, or encourages a child to violate any federal or state law, municipal or county ordinance, or court order." § 18–6–701(1).

Davis argues that under the plain language of the 2005 version of the liquor code, she could not be prosecuted for the felony of contributing to the delinquency of a minor under section 18–6–701(1). We are not persuaded based on the prior law, the consequences of Davis's statutory interpretation, and the 2007 legislative history.

## A. Prior Law

"[A] single act may violate more than one criminal statute." *People v. Stewart*, 55 P.3d 107, 114 (Colo.2002); *People v. Owens*, 670 P.2d 1233, 1237–38 (Colo.1983); *People v. Westrum*, 624 P.2d 1302 (Colo. 1981). However, the enactment of a specific criminal statute precludes prosecution under a general criminal statute when the statutory language "clearly indicates that the legislature intended to limit prosecution to the specific statute." *Stewart*, 55 P.3d at 115; *People v. Smith*, 938 P.2d 111, 115–16 (Colo. 1997); *Westrum*, 624 P.2d at 1303.

In *People v. Bagby*, 734 P.2d 1059 (Colo. 1987), the defendant filed an application requesting issuance of a hotel and restaurant liquor license and falsely indicated that he had not had a prior interest in any Colorado liquor license. The district court dismissed the information charging the defendant with a class five felony offense of offering a false instrument for recording, concluding that the alleged conduct would constitute a misdemeanor violation of the Colorado Liquor Code. The supreme court affirmed, stating that the broad language of the liquor code indicated that in adopting specific penal provisions of the code, the General Assembly exercised the full police power of the state, considered the full range of possible sanctions in selecting those most appropriate for violations of the liquor code, and thoroughly considered all aspects of the licensing process, including the fashioning of appropriate sanctions. Given these circumstances, the court concluded that "[t]he designation of a very few violations as matters to be prosecuted under provisions of the Criminal Code strongly indicates a legislative determination that all other violations of the Liquor Code shall be prosecuted as provided by the penal provisions of the Liquor Code itself." *Bagby*, 734 P.2d at 1062.

In other words, a prosecutor must charge prohibited conduct under the liquor code, rather than under a similar provision of the criminal code, unless criminal prosecution is otherwise authorized by the legislature.

In *People v. O'Donnell*, 926 P.2d 114 (Colo. App.1996), the People charged the defendant with a class four felony, contributing to the delinquency of a minor, for inducing, aiding, and encouraging a child to possess alcohol. The People argued that *Bagby* had been limited by the General Assembly's reenactment of both the general statute prohibiting conduct contributing to the delinquency of a minor and the liquor code. A division of this court rejected the People's argument, holding that, contrary to the People's contention, the reenacted statute was not materially different from the provision in the liquor code in effect when *Bagby* was announced, which then prohibited the same conduct. As to the reenactment of the liquor code, the division held that if the General Assembly wanted the criminal code proscription of contributing to the delinquency of a minor to supplant the liquor code proscription against providing alcohol to a minor, and thereby transform the class two liquor code misdemeanor into a class four felony, it would have done so. *O'Donnell*, 926 P.2d at 116.

In 1997, the General Assembly did so. In reaction to the *O'Donnell* decision, it amended the liquor code to expand liability under the criminal code for certain violations of the contributing to the delinquency of a minor statute. This amendment gave prosecutors the discretion to charge certain violations either as a felony under the criminal code or as a misdemeanor under the liquor code. As revised, the 1997 statute provided:

12–47–903. Violations—penalties. (5) Any person ~~violating~~ WHO KNOWINGLY VIOLATES the provisions of ~~section 12–47–901(1)(d)~~ SECTION 12–47–901(1)(a), (1)(d), or (1)(k), OR ANY PERSON WHO KNOWINGLY INDUCES, AIDS, OR ENCOURAGES A PERSON UNDER THE AGE OF EIGHTEEN TO VIOLATE THE PROVISIONS OF SECTIONS 12–47–901(1)(a), (1)(b), or (1)(c) may be proceeded against pursuant to section 18–6–701, C.R.S., for contributing to the delinquency of a minor.

Ch. 264, sec. 5, § 12–47–903(5), 1997 Colo. Sess. Laws 1540–41 (capital letters indicate new material; dashes through words indicate deletions).

Notably, all other subsections mentioned in section 12–47–903(5) referred to a person

"under twenty-one years of age." *See* § 12–47–901(1)(b)–(d), (k), C.R.S.2008.

In 2005, the General Assembly restructured section 12–47–901(1), amending that provision's subsection (a) and creating (a.5) as follows:

> Except as provided in section 18–13–122, C.R.S., it is unlawful for any person:
>
> (a) To sell, serve, give away, dispose of, exchange, or deliver, or permit the sale, serving, giving, or procuring of, any alcohol beverage ~~to or for any person under the age of twenty-one years,~~ to a visibly intoxicated person or to a known habitual drunkard;
>
> (a.5)(I) TO SELL, SERVE, GIVE AWAY, DISPOSE OF, EXCHANGE, OR DELIVER, OR PERMIT TO SALE, SERVING, GIVING, OR PROCURING OF, ANY ALCOHOL BEVERAGE TO OR FOR ANY PERSON UNDER THE AGE OF TWENTY–ONE YEARS. . . .

Ch. 282, sec. 2, § 12–47–901, 2005 Colo. Sess. Laws 1243.

This amendment impacted section 12–47–903(5), which referred to section 12–47–901(1)(a), but was not amended to refer to new subsection (1)(a.5):

> Any person who knowingly violates the provisions of section 12–47–901(1)(a), (1)(d), or (1)(k), or any person who knowingly induces, aids, or encourages a person under the age of eighteen to violate the provisions of section 12–47–901(1)(a), (1)(b), or (1)(c) may be proceeded against pursuant to section 18–6–701, C.R.S., for contributing to the delinquency of a minor.

Ch. 264, § 5, § 12–47–903, 1997 Colo. Sess. Laws 1540.

Thus, after the 2005 amendment, section 12–47–903(5) did not expressly authorize prosecution for violations of section 12–47–901(1)(a.5), pursuant to section 18–6–701(1). Nonetheless, Davis was charged with a felony under the criminal code for contributing to the delinquency of a minor, rather than under the liquor code, which makes similar prohibited conduct a misdemeanor.

Because the legislative intent is not reasonably certain from the plain language of the 2005 version of section 12–47–903(5), we look to the prior version of the law, the goal of the statutory scheme, the consequences of its construction, and the legislative history to determine legislative intent. *See Luther*, 58 P.3d at 1015.

In 1997, the General Assembly manifested its intent that violations of the liquor code proscription of providing liquor to a minor would also violate the general criminal code proscription against contributing to the delinquency of a minor. In doing so, the legislature explicitly provided that these violations of the liquor code could also be prosecuted under the criminal code. *Cf. Bagby*, 734 P.2d at 1062; *O'Donnell*, 926 P.2d at 116. Thus, unlike the statutes considered in the *Bagby* and *O'Donnell* decisions, the plain language of the 1997 statute explicitly reflected the legislature's intent to permit prosecution under the criminal code.

Similar to the *Bagby* court and the *O'Donnell* division, we must determine whether the General Assembly intended that conduct violating the liquor code be punishable under the criminal code as well. However, we do so in the context of the General Assembly's intent reflected in the 1997 amendment.

In this context, we conclude that the 1997 amendment demonstrates that the General Assembly intended that liquor code violations pertaining to providing alcohol to minors could be punishable under the criminal code.

Further, we conclude that the 2005 amendment, and the fact that the General Assembly did not, at the same time, amend section 12–47–903(5) to reflect the addition of subsection (a.5) in 12–47–901(1), do not express or imply an intention to preclude prosecution of contributing to the delinquency of a minor under the criminal code.

Further, we note that the General Assembly fixed its apparent drafting error in 2007. *See* Ch. 383, sec. 1, § 12–47–903(5), 2007 Colo. Sess. Laws 1686.

**B. Consequences of Davis's Construction**

Under Davis's interpretation of the statutes, a criminal code felony charge for contributing to the delinquency of a minor would apply to a person who provided alcoholic

beverages to an individual of any age who was visibly intoxicated, but would not apply to a person who provided alcoholic beverages to a minor. We conclude this interpretation would lead to an illogical or absurd result.

Section 12–47–903(5), prior to 2005, permitted prosecutors to charge contributing to the delinquency of a minor if a person violated then existing section 12–47–901(1)(a) by providing "alcohol beverage[s] to or for any person under the age of twenty-one years, [or] to a visibly intoxicated person or to a known habitual drunkard."

Between 2005 and 2007, however, the statute authorized a contributing to the delinquency of a minor charge only if a person provided "alcohol beverage[s] to a visibly intoxicated person or to a known habitual drinker." *Compare* ch. 264, sec. 5, § 12–47–903, 1997 Colo. Sess. Laws 1540–41, *with* ch. 282, sec. 2, § 12–47–901, 2005 Colo. Sess. Laws 1243. Noticeably absent from the applicable version of section 12–49–903(5) between 2005 and 2007 is any reference to prosecuting as a felony providing alcoholic beverages to any person *under the age of twenty-one,* which was moved to section 12–47–901(1)(a.5).

The pre–2005 version of the law and the current, post–2007, version of the law show that the General Assembly intended a violation of section 12–47–901(1)(a.5) to be chargeable under the criminal code for contributing to the delinquency of minor. The law between 2005 and 2007 however, seemed to contravene this statutory intent.

■ "To reasonably effectuate the legislative intent, a statute must be read and considered as a whole." *Dist. Court,* 713 P.2d at 921.

Construing the 2005 amendments to section 12–47–901(1) together with the 2005 version of section 12–47–903(5), and reading the statutes as a whole so as to avoid an absurd or illogical result, we conclude that the General Assembly intended section 12–47–903(5) to apply to 12–47–901(1)(a.5) between 2005 and 2007. *See Frazier,* 90 P.3d at 811 (it was absurd to construe driving under influence vehicular homicide offense to have a less severe punishment than reckless vehicular

homicide offense and to punish this particular felony conviction to one year or less in county jail, which traditionally applies only to misdemeanor offenses); *People v. Madden,* 87 P.3d 153, 159 (Colo.App.2003) (it was absurd to construe statute as referring to a nonexistent section, which was an evident typographical error made by the General Assembly), *rev'd on other grounds,* 111 P.3d 452 (Colo.2005); *People v. Apodaca,* 58 P.3d 1126, 1131 (Colo.App.2002) (it was absurd to construe habitual criminal statute to establish the maximum sentencing allowed for conviction of defendant under Sex Offender Lifetime Supervision Act).

Giving consistent, harmonious, and sensible effect to all parts of the statute, we further conclude that the General Assembly intended to continue prosecutorial discretion to charge persons violating section 12–47–901(1)(a.5) under either the criminal code, section 18–6–701, or under the liquor code. This construction gives effect to the intent of the General Assembly and leads to a reasonable result. *See* § 2–4–209, C.R.S.2008 (reference to any portion of a statute applies to all reenactments, revisions, or amendments thereof).

### C. Legislative History

Our conclusion is further supported by the legislative history for the 2007 amendments to section 12–47–903(5). *See Larimer County Comm'rs,* 911 P.2d at 701 (using subsequent legislative history to interpret statutory provision). Although the 2005 legislative history does not address the reason for the modification to section 12–47–901(1) but not to section 12–47–903(5), the 2007 legislative history shows that based on the 2005 amendments, section 12–47–903(5) should have been amended at the same time.

First, Representative Terrance Carroll discussed the bill before the House Judiciary Committee. He stated that "[this bill] clarifies statutory authority to prosecute distribution of alcohol as contributing to the delinquency of a minor." Hearings on S.B. 07–114 before the House Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Apr. 25, 2007) (Apr. 25, 2007 Hearings).

Second, testimony by Dave Thomas, Executive Director of Colorado's District Attorney's Council, explained that it was a mistake not to amend section 12–47–903(5) in 2005. *Id.; see also People v. Rockwell*, 125 P.3d 410, 419 (Colo.2005) ("While less persuasive than a statement of a legislator during debate, testimony before a congressional committee helps illustrate the understanding of legislators and, thus, helps identify the legislative intent."). Thomas testified: "[W]hen we changed statutes a couple years ago, there was a, frankly, an error made ...," referring to the pre–2005 statutes. Apr. 25, 2007 Hearings. He continued: "[B]asically we [want to change it] back the way it was before." *Id.*

Accordingly, we conclude that the General Assembly intended to allow felony prosecutions for contributing to the delinquency of a minor between 2005 and 2007, and, thus, the trial court did not err in allowing the People to charge Davis with contributing to the delinquency of a minor under section 18–6–701(1) of the criminal code. Furthermore, because Davis does not suggest that such a reading would violate due process or ex post facto protections, we do not address either issue.

### III. CRE 404(b) Other Act Evidence

Davis also contends that the trial court abused its discretion in admitting evidence of her prior acts involving alcoholic beverages and minors without preliminarily determining that she committed the acts and in not properly applying the test for admission of other acts evidence. We disagree.

■ We review the trial court's admission of evidence for an abuse of discretion. *People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002); *People v. Martinez*, 36 P.3d 154, 158 (Colo.App.2001). We will not disturb the trial court's ruling unless it is manifestly arbitrary, unreasonable, or unfair. *See Rath*, 44 P.3d at 1043.

■ A defendant's prior acts cannot be admitted to prove the character of the defendant to show that he or she acted in conformity with that character. CRE 404(b). However, prior bad acts may be admitted for

limited purposes to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* The trial court must determine if the evidence is admissible for one of these purposes under the test described in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990). *See Rath*, 44 P.3d at 1038–39.

■ Before admitting prior act evidence, the "trial court must be satisfied by a preponderance of the evidence that the prior bad act occurred and that the defendant committed the act." *People v. Warren*, 55 P.3d 809, 814 (Colo.App.2002) (citing *People v. Garner*, 806 P.2d 366, 373 (Colo.1991)). The prosecution may satisfy the burden based on an offer of proof. *People v. Groves*, 854 P.2d 1310, 1313 (Colo.App.1992) (court considered competing offers of proof in making its evidentiary ruling); *see also People v. Moore*, 117 P.3d 1, 3 (Colo.App.2004) ("both parties were given the opportunity to present all the evidence in the case by offers of proof, and the trial court considered all the evidence and made the requisite findings").

■ "The [trial] court is not required to hold a hearing if it can determine from the offer of proof that the other acts occurred by a preponderance of the evidence." *People v. Ma*, 104 P.3d 273, 277 (Colo.App.2004), *rev'd on other grounds*, 121 P.3d 205 (Colo.2005); *see also State v. Kilgore*, 107 Wash.App. 160, 26 P.3d 308, 323 (2001) (the trial court could rule on Rule 404(b) evidence based on an offer of proof without an evidentiary hearing), *aff'd*, 147 Wash.2d 288, 53 P.3d 974 (2002); *State v. Kasper*, 409 N.W.2d 846, 847–48 (Minn.1987) (the trial court can rely upon the People's offer of proof because the prosecutor has an ethical duty to give an accurate offer of proof, and the trial court could exclude the evidence if not supported by a preponderance of evidence). However, the court may, in its discretion, hold a hearing "if it finds that one is necessary to determine whether the prior act occurred." *Ma*, 104 P.3d at 277.

■ Further, the trial court can determine that the prior act occurred and that the defendant committed the act without making

explicit findings on the record. *See Warren,* 55 P.3d at 814.

■ After making that determination, prior bad act evidence is admissible if it (1) relates to a material fact; (2) is logically relevant, such that it has a tendency to make the existence of the material fact more or less probable; (3) is relevant independent of the intermediate inference that the defendant has a bad character and acted in conformity with that character in committing the crime; and (4) has probative value that is not substantially outweighed by the danger of unfair prejudice. *Spoto,* 795 P.2d at 1318.

Here, the trial court admitted evidence of three prior acts concerning Davis: (1) she gave M.S. an alcoholic beverage in June 2005; (2) she gave M.S. an alcoholic beverage in August 2005; and (3) a week prior to the incident at issue, Davis allowed B.W. to have a party after a school dance at which she witnessed minors consuming alcohol in her house.

### A.   Proof That Other Acts Occurred

■ Davis argues that the trial court erred in admitting the prior acts evidence because it did not determine that the prosecution met its burden under *Garner* to show that the other acts occurred. We do not agree.

The trial court and counsel for the parties had a lengthy discussion regarding whether the prosecution could rely on its offer of proof to establish by a preponderance of the evidence that the other acts occurred. The prosecutor argued that his offer of proof was based on statements made by juveniles to police officers. Defense counsel did not dispute the offer of proof, but contended that an evidentiary hearing was necessary and feasible, because the juveniles in question were in the hallway outside the courtroom. During the colloquy, the trial court noted that a reported decision authorized it to rely on the prosecution's offer of proof. Shortly after defense counsel disputed that statement, the trial court declared, "All I'm determining is if believed by the jury that whether these acts fall within the analysis provided by 404(b) in the *Garner* case. That's all I'm determining."

After noting the *Spoto* factors had been established, the trial court ruled:

I am going to find that the prosecution has met its burden by a preponderance of the evidence, and again, if the jury believes these folks, they can choose to believe them or not believe them. I am going to find that … [the proffered] alleged acts that occurred are admissible pursuant to 404(b) and the *Spoto* and *Garner* cases.

Davis maintains that the above-quoted statements show that the trial court did not determine that the other acts occurred but deferred to the jury's determination in that regard.

In light of the colloquy described above, however, we conclude that the trial court relied on the prosecution's offer of proof and determined that the prior acts occurred and that Davis committed them. *See Warren,* 55 P.3d at 814 (the trial court implicitly determined that the prior act occurred); *People v. McGraw,* 30 P.3d 835, 838 (Colo.App.2001) (the trial court implicitly determined that the defendant committed other act in ruling that the evidence was admissible).

Accordingly, we reject Davis's contention that the trial court's ruling shows that it did not determine whether she had committed the prior acts. In our view, the colloquy showed that the trial court recognized its responsibility to determine that the prior acts had occurred. Thus, while Davis's interpretation is a possible reading of the trial court's ruling, we conclude that, in context, the court determined the incidents occurred, but recognized that the ultimate weight to be given to the other acts evidence was for the jury to decide. It was sufficient for the trial court to find that the prosecution met its burden by a preponderance of the evidence through its offer of proof.

### B.   Application of *Spoto* Test

■ Davis contends that the trial court abused its discretion by not properly considering steps two through four of the *Spoto* test. We disagree.

The trial court explicitly stated that Davis's other acts

relate to a material fact or [were logically relevant], they are independent of an intermediate inference that the defendant has bad character, and the probative value of the evidence substantially outweighs any danger of unfair prejudice.... [These acts] are admissible pursuant to 404(b)....

We perceive no abuse of discretion in the trial court's *Spoto* findings.

First, Davis's prior acts related to a material fact that she knew B.W. and her friends would consume alcohol while at her house. Davis does not dispute that the evidence met this factor.

Under the second *Spoto* factor, Davis's prior acts were logically relevant. Logical relevancy tends to make the existence of the material fact more or less probable. We agree with the People that Davis's prior knowledge of M.S. drinking in her home would tend to make the existence of that material fact more probable in the incident at issue. Further, it is logically relevant to show absence of mistake and motive.

Under the third *Spoto* factor, Davis's prior acts were relevant independent of the inference that Davis has a bad character. The trial court admitted the prior act evidence only for the limited purpose of showing knowledge, absence of mistake, and motive. It reiterated the limited purpose of the evidence during testimony and in the jury instructions. The jury is presumed to follow instructions, unless contrary evidence is shown. *People v. Moody,* 676 P.2d 691, 697 (Colo.1984).

Finally, the probative value of the prior acts was not substantially outweighed by the danger of unfair prejudice under the fourth *Spoto* factor.

Thus, the trial court did not abuse its discretion in admitting the CRE 404(b) prior acts evidence for the limited purpose of showing knowledge, absence of mistake, and motive.

### IV. Admissibility of Videotaped Interviews

Davis further contends that the trial court abused its discretion in excluding the videotaped interview of Reynolds and her first videotaped interview. We disagree.

We review a trial court's rulings on evidentiary issues for an abuse of discretion. *Stewart,* 55 P.3d at 122. A trial court abuses its discretion if its rulings are manifestly arbitrary, unreasonable, or unfair. *Id.*

#### A. Reynolds's Videotape

Davis asserts that Reynolds's videotaped interview was improperly excluded at trial. More specifically, she argues that his statement was (a) relevant, (b) not hearsay, and (c) admissible both as a statement against interest and under the residual exception to the hearsay rule. More particularly, Davis maintains that the part of the videotape in which Reynolds stated that he observed B.W. and M.S. attempting to conceal their drinking was relevant and probative because it indicates Davis did not knowingly allow minors to drink alcohol. We disagree.

Under CRE 804(b)(3), a statement against interest is not hearsay and is admissible if, at the time it is made, the statement subjects the declarant to criminal liability and is of such significance that the declarant would not have made the statement unless he or she believed it to be true. Further, both the precise statement against penal interest and collaterally neutral statements are admissible. *People v. Newton,* 966 P.2d 563, 579 (Colo.1998). An entire statement is admissible, unless (1) the statement is so self-serving as to be unreliable, or (2) the trial court determines that the declarant had a significant motivation to curry favorable treatment. *Id.*

Hearsay statements may also be admissible under the residual exception to the hearsay rule. CRE 807. If the statement has circumstantial guarantees of trustworthiness, it is admissible if the court determines that (a) the statement is offered as evidence of a material fact; (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent

can procure through reasonable efforts; and (c) the general purposes of these rules and the interests of justice will be best be served by admission of the statement. CRE 807.

In October 2005, the police interviewed Reynolds and videotaped the interview. Reynolds was unavailable to testify during trial, and Davis sought to admit his videotaped statements.

At trial, the court viewed the videotape but refused to admit it. Davis argued the evidence was not cumulative, was against Reynolds's interests because he admitted buying alcohol for the minors at Davis's home, and was trustworthy. She distinguished his statements as more reliable than those of other witnesses because he was the only sober person who was involved in the incident. Davis also wanted to use the statements to impeach another witness.

The trial court found that "impeachment on tangential issues is not a material fact." In the end, the court found that the videotape was not more probative on the point for which it was offered and thus refused to admit it.

Davis asserts that the statements were relevant because they tended to prove that B.W. and M.S. tried to hide their drinking from her; and that because he was the only sober witness, Reynolds's statements tended to make the consequential fact that Davis did not know about the drinking more probable.

We disagree with Davis that these statements were against Reynolds's interest. Rather, they were neutral statements about what he observed, while his other statements that he bought alcohol for minors were arguably statements against interest. Contrary to Davis's contention, the circumstances here are the opposite of those in *Newton.* There, the supreme court held that "a narrative's precise statement against penal interest" and related, collaterally neutral statements are admissible under CRE 804(b)(3).

Here, in contrast, Davis sought to admit Reynolds's videotape because of his "collaterally neutral statement," about the furtive behavior of B.W. and M.S., which was otherwise inadmissible hearsay. She then sought to bootstrap the admission of this hearsay statement by including Reynolds's statement against interest about providing alcohol to minors.

In so doing, Davis put the cart before the horse. Under CRE 804(b)(3), a party may not use a collateral statement against interest to secure the admission of an otherwise inadmissible hearsay statement.

■ We further conclude that any error in refusing to admit Reynolds's interview as a statement against interest is harmless because this evidence was cumulative. B.W. testified that she tried to conceal the alcohol consumption going on outside when Davis awoke and came downstairs at 1:30 a.m. Reynolds's similar videotaped statement would have been cumulative. Thus, the trial court did not abuse its discretion in excluding it.

■ Finally, we conclude the trial court did not abuse its discretion in not admitting the evidence under CRE 807. Davis argues that Reynold's statement was evidence of a material fact, namely, that she did not knowingly allow the minors to drink at her home. She also argues that the statement was more probative than other evidence because Davis was sober and the other witnesses had been drinking. She also asserts that his statement was trustworthy because he had nothing to gain from making his statement.

We agree with the trial court that Reynolds's statement of observing furtive behavior did not relate to a material fact because, even if true, it did not prove Davis did not provide alcohol to B.W. and her friends earlier in the evening. Thus, the trial court did not abuse its discretion in excluding Reynolds's videotape under CRE 807.

Further, the People assert, and we agree, that the statement is not more probative on the point for which it is offered than any other evidence, because B.W., the person who actually went inside the house and attempted to conceal the drinking activities from Davis, so testified. Because B.W. testified regarding her intent to conceal the drinking activities from Davis, that evidence was more probative.

Accordingly, the trial court did not abuse its discretion in excluding Reynolds's videotape.

### B. Davis's Videotape

■ Davis asserts that the trial court abused its discretion in excluding the first videotaped interview she had with the police because (a) the rule of completeness afforded her the right to admit it and provide context for statements made in the second videotape, and (b) it was admissible to bolster her credibility as a prior consistent statement. We are not persuaded.

■ Under the rule of completeness, when one party introduces part of a written or recorded statement, the opposing party can introduce other parts of that statement. CRE 106; *People v. Medina*, 72 P.3d 405, 410 (Colo.App.2003). CRE 106 favors the admission of a criminal defendant's entire statement. *People v. A.W.*, 982 P.2d 842, 846 n. 4 (Colo.1999).

■ However, self-serving hearsay declarations made by a defendant may be excluded because there is nothing to guarantee their trustworthiness. *People v. Avery*, 736 P.2d 1233, 1237 (Colo.App.1986); *see also People v. Abeyta*, 728 P.2d 327, 331 (Colo. App.1986) (hearsay declarations made by a defendant in his or her own favor are generally not admissible; self-serving declarations are excluded because there is nothing to guarantee trustworthiness).

The first taped interview included Davis's statements to the police that she did not knowingly provide alcohol to M.S. Some of the questions in this interview were repeated on the second interview videotape. However, Davis's inculpatory answers during the second interview differed from the general denials she made in the first interview. The trial court found the statements Davis made during the first interview were self-serving hearsay that was untrustworthy.

Davis argued that the videotape was one continuous interview that was only interrupted by a polygraph test, which was scheduled on a different day. She argued the difference in her answers from the first videotape to the second resulted from the strain of police pressure during the second interview, which was only understandable after watching the videotape of the first interview.

However, Davis testified at trial. She was free to reassert the same statements she made in the first interview in her testimony, and she so testified. Thus, she was not prejudiced by the exclusion of the videotape of the first interview.

■ Next, Davis did not argue at trial that the videotape was admissible under CRE 801(d)(1)(B) as a prior consistent statement. Thus, we review this contention for plain error. *People v. Eppens*, 979 P.2d 14, 18 (Colo.1999).

■ Plain error occurs when an error or defect affects the defendant's substantial rights, and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

■ The determination of how much of a prior consistent statement is admissible is based upon its relevance and probative value. *Id.* at 22 (use of such statements is governed by the general rules of relevancy); *People v. Tyler*, 745 P.2d 257, 259 (Colo.App.1987).

In *Eppens,* the trial court admitted prior consistent statements to give the jury a complete picture of the credibility of the witness. However, that case concerned a child sexual abuse victim who had made conflicting statements regarding the alleged sexual abuse to an investigator. The investigator was able to testify about the prior consistent statements, which were necessary to give the jury a complete picture of the victim's credibility as a witness.

■ Here, the statements were reiterations of Davis's prior denials of her knowledge of and permission for the underage drinking at her house. Thus, the statements were not necessary to give the jury a complete picture of her credibility.

Davis also contends that this videotape was admissible under the prior consistent statement rule because it was offered to rebut an express or implied charge against her of recent fabrication. She argues that the Peo-

ple effectively alleged that the statements she made in her trial testimony were recent fabrications made after the second interview.

However, Davis's defense from the inception of the case was complete denial of the allegations against her. Thus, all evidence presented by the People to the contrary necessarily implied that her credibility was an issue, and the People did not expressly or impliedly assert that it was a recent fabrication.

There was no error, plain or otherwise, in excluding the videotape. Thus, the trial court did not abuse its discretion in excluding Davis's first videotape.

### C. Due Process

■■■ Davis further contends that the trial court's exclusion of Reynolds's videotaped statement and her first videotaped interview violated her due process rights under the Sixth Amendment. We disagree.

■■■ "The right of an accused to present evidence in his [or her] defense is a fundamental component of due process of law." *People v. Bell*, 809 P.2d 1026, 1029 (Colo.App.1990). The exclusion of criminal defense evidence may be of constitutional magnitude. *Id.* "Before an exclusion reaches such proportions, the accused must make a plausible showing of how the evidence would have been both material and favorable to his [or her] defense." *Id.*

The exclusion of Reynolds's videotaped statement did not prejudice Davis or violate her due process rights to present evidence tending to prove her innocence. The same statements and observations Reynolds made regarding the incident were admitted at trial through other testimony. Thus, this evidence tending to prove Davis's innocence was already before the jury.

Similarly, the exclusion of the videotape of Davis's first interview did not violate her right to present evidence tending to prove her innocence. Davis herself testified at trial. Thus, any statements she made in the first interview could have been explored through her trial testimony. The addition of

the videotape would not have admitted any new evidence tending to prove her innocence.

The judgment of conviction is affirmed.

Judge CARPARELLI concurs.

Judge CONNELLY specially concurs.

Judge CONNELLY specially concurring.

I write separately because my analysis of the statutory issue involving the interplay between the criminal and liquor codes differs from that of the lead opinion. I concur in the result on that issue, and concur in the remainder of the opinion.

On its face, the criminal code provision under which defendant was convicted undeniably covers her conduct. Defendant argues she should have been prosecuted for a misdemeanor offense under the liquor code rather than for a felony offense under the criminal code. This normally would be a losing argument: where two criminal statutes apply to the same conduct, the "general rule" allows prosecutions under either statute. *People v. Stewart*, 55 P.3d 107, 118 (Colo.2002) (applying the "general rule" that "the prosecution has discretion to determine what charges to file when a defendant's conduct violates more than one statute"). But two cases decided prior to 1997 construed the liquor code, as it then existed, to displace this general rule. *See People v. Bagby*, 734 P.2d 1059 (Colo. 1987); *People v. O'Donnell*, 926 P.2d 114 (Colo.App.1996).

In 1997, the Colorado legislature unequivocally reinstated the general rule allowing persons providing alcohol to minors to be charged under either the liquor code or the criminal code. This express authorization lapsed from 2005 when the legislature created a new subsection until 2007 when it recognized and corrected the drafting error.

To me, the issue is whether defendant may be prosecuted under a criminal code provision plainly covering her conduct during a gap period when the liquor code did not expressly allow the prosecution. Should we apply the general rule allowing prosecution under either of two applicable statutes, or the *Bagby–O'Donnell* construction of the pre–1997 liquor code?

I would apply the general rule. The 1997 legislature made clear its intent to allow prosecutions in cases like this under either the criminal or liquor code. While this express authorization inadvertently lapsed from 2005–2007, there is no indication the legislature intended to displace the criminal code during that period. Accordingly, while *Bagby* and *O'Donnell* construed the pre–1997 liquor code implicitly to displace the criminal code, those analyses of pre–1997 legislative intent do not control after 1997.

Defendant therefore may be prosecuted under a criminal code provision that plainly covers her conduct. We need not construe the 2005–2007 liquor code to authorize prosecution under the criminal code; instead, we need only hold it did not preclude such a prosecution.