21CA1368 Peo v Zotto 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 21CA1368
Arapahoe County District Court No. 19CR2064
Honorable Joseph Whitfield, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Keith Allen Zotto,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE HARRIS
J. Jones and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Keith Allen Zotto, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder of his wife.  We affirm.

I.    Background

¶ 2    Late on a Saturday night, Zotto and his wife were drinking together in their garage.  Throughout the night, they argued about unpaid bills.  The argument intensified around midnight, and the victim retrieved a gun and hit Zotto with it.  Zotto gained control of the gun, and, as the victim held up her hands and pleaded with him not to shoot, Zotto shot her in the face, killing her.  Then he hid her body in a trash can and cleaned up the garage before his children returned home that morning.

¶ 3    A couple of days later, Zotto confessed to his sister.  He admitted that he pointed the gun at the victim, she "put her hand up and said, 'Keith, don't,'" and then he "blinked his eyes and when he opened [them], he saw her teeth on the ground."  He did not say that he "was angry" or that "he hated [the victim]," but he told his sister that he "couldn't take it anymore."

¶ 4     While Zotto was at his sister's house, the police discovered the victim's body in the couple's garage.  Zotto was charged with one count of first degree murder.

¶ 5     At trial, defense counsel conceded that Zotto shot his wife.  But she argued that he was too intoxicated to form the requisite mental state for first or second degree murder and that he accidentally discharged the gun.  She asked the jury to find Zotto guilty of the lesser included offense of manslaughter.  The jury found him guilty of first degree murder instead.

¶ 6     On appeal, Zotto contends that the court erred by (1) admitting evidence of prior acts of domestic violence under CRE 404(b); (2) admitting a recording of his sister's entire twenty-minute interview with police; and (3) instructing the jury on the exceptions to self-defense.

## II.    Evidentiary Issues

¶ 7     We review a trial court's evidentiary rulings for an abuse of discretion.  *People v. McLaughlin*, 2023 CO 38, ¶ 22.  A court abuses its discretion if its ruling is "manifestly arbitrary, unreasonable, or unfair" or "when it misapplies the law."  *Id.*  If we determine that the court erred, we will reverse based on a

preserved, nonconstitutional error if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Hagos v. People*, 2012 CO 63, ¶ 12 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

### A. Admission of Prior Acts of Domestic Violence

¶ 8    At trial, the victim's colleague, who was a close friend, testified that in the months leading up to the shooting, the victim had twice come to work with visible injuries. On the first occasion, the victim was wearing sunglasses, and when she took them off, the friend saw "that she had a very black eye" that "was really bloodshot." The victim was "really upset" and "crying." She told the friend that she and her husband had argued and that she "need[ed] to learn to not talk back." On the second occasion, a few months later, the victim came to work wearing sunglasses and a scarf. When she took them off, the friend saw "a bruise around [the victim's] neck," and "[h]er eyes were so bloodshot, it was hard [for the friend] to even look at her." The victim said that she and her husband had argued, and he "strangled her on the kitchen floor." She told the friend that she was so scared of Zotto that "she would sleep in her car a lot."

¶ 9    Over defense counsel's objection, the court ruled that the evidence was admissible under CRE 404(b) to show "the mental state of the defendant" — meaning, Zotto's motive, intent, and knowledge — and to rebut his claims of self-defense and accident.

¶ 10   On appeal, Zotto contends that the court erred by admitting the prior act evidence because, first, the friend's testimony was hearsay, and, second, the court failed to articulate a precise evidential hypothesis explaining how the prior acts were relevant for any purpose other than establishing propensity.

### 1.    Hearsay

¶ 11   As an initial matter, we reject Zotto's argument that the friend's testimony constituted inadmissible hearsay.  Hearsay is an out-of-court statement admitted for the truth of the matter asserted.  CRE 801(c).  Hearsay is inadmissible unless it falls within an exception to the rule prohibiting it.  CRE 802.

¶ 12   In admitting the friend's testimony, the court relied on the residual exception, which allows a hearsay statement to be admitted if it has "circumstantial guarantees of trustworthiness" and it satisfies the rule's three part test: the statement is offered as evidence of a material fact; the statement is more probative on the

point for which it is offered than any other available evidence; and admission of the statement will serve the purpose of the rules and the interests of justice. CRE 807.

¶ 13     Zotto does not dispute that the friend's testimony satisfies the three-part test. Instead, he says that the victim's statements to the friend were insufficiently trustworthy because they "lacked detail and corroboration." Contrary to Zotto's argument, the only reasonable inference from the victim's statements to the friend about the first incident was that Zotto hit her and caused the black eye. Thus, the victim's statement was not untrustworthy because it did not "detail that [Zotto] hit her or otherwise how she came to be injured." Nor is there any independent corroboration requirement. (After all, if the witness had observed the prior acts, her testimony would not be hearsay.) Even so, the victim's statements were corroborated by her injuries and by her demeanor during her disclosure to the friend. *See People v. McFee*, 2016 COA 97, ¶ 22.

## 2.    Admission of Prior Act Evidence

¶ 14     Generally, evidence of other crimes, wrongs, or acts is not admissible to prove a person's character "in order to show that on a particular occasion the person acted in conformity with the

character." CRE 404(b)(1). However, such evidence may be admissible for a limited purpose — as relevant here, to prove motive or intent or to refute a claim of accident or self-defense. *See* CRE 404(b)(2); *Yusem v. People*, 210 P.3d 458, 465 (Colo. 2009) (In assessing admissibility of CRE 404(b) evidence, "the defendant's mental state and rebutting self-defense are two sides of the same inquiry.").

¶ 15    And when the prior acts are acts of domestic violence, the evidence is generally considered "helpful and . . . necessary" to establish, among other things, the "escalating levels of seriousness" of the domestic violence. § 18-6-801.5(1), C.R.S. 2024; *see also People v. Cross*, 2023 COA 24, ¶ 22 (In enacting section 18-6-801.5, the legislature intended to "place[] its finger on the scale in favor of admitting evidence of prior acts of domestic violence in prosecutions involving domestic violence.").

¶ 16    Evidence is admissible under Rule 404(b) or section 18-6-801.5 only if it satisfies the four-part test articulated in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990): (1) the evidence must relate to a material fact; (2) the evidence must be logically relevant; (3) the logical relevance must be independent of the propensity

inference prohibited by Rule 404(b); and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.

¶ 17 Zotto challenges only the court's finding under the third *Spoto* prong: He says the court did not explain how the prior act evidence was logically relevant independent of a prohibited propensity inference.

¶ 18 It is well established, though, that prior acts of domestic violence are admissible to prove motive, intent, and lack of accident. The fact that Zotto had previously hit the victim in the face and strangled her provided a motive for his conduct on the night of the shooting and made it more likely that he intended to harm her rather than having accidentally shot her. Thus, the evidence was logically relevant to the critical disputed issue in the case — whether Zotto's act was intentional — and its relevance was independent of any propensity inference. *See, e.g., Cross*, ¶ 24 (evidence of the defendant's prior acts of domestic violence against the victim were admissible to prove motive, intent, and lack of accident); *People v. Vasquez*, 2022 COA 100, ¶ 77 (evidence of the defendant's prior act of breaking the victim's television during an

7

argument was admissible to prove lack of accident); *People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009) (evidence of the defendant's prior acts of punching, beating, and choking the victim were admissible to prove intent and to rebut of a claim of accident); *People v. Gross*, 39 P.3d 1279, 1282 (Colo. App. 2001) (evidence of prior acts of domestic violence against the victim were admissible to prove motive and intent); *see also Yusem*, 210 P.3d at 465 ("Because the prior act evidence is logically relevant to demonstrate [the defendant's] mental state, it necessarily is relevant to rebut his claim of self-defense.").

¶ 19    We conclude that the court properly admitted the friend's testimony under CRE 404(b) and section 18-6-801.5.[1]  Thus, even though the trial court's findings or explanation could have been more detailed, we discern no error.  *See, e.g.*, *People v. Cousins*, 181 P.3d 365, 370 (Colo. App. 2007).

¶ 20    Finally, we reject Zotto's argument that the court's limiting instruction requires reversal.  The instruction provided as follows:

---

[1] Even assuming the evidence was not admissible to prove "knowledge," Zotto does not explain how its admission for this *additional* purpose could have prejudiced him given its admissibility for other, legitimate purposes.

> The court admitted certain evidence for a limited purpose.  You are again instructed that you cannot consider that evidence except for the limited purpose of establishing Mr. Zotto's motive, intent, knowledge, and or to rebut the defense of self-defense and/or accident.  You shall not consider it for any other purpose. . . .  You may not use this evidence to show that Mr. Zotto has a bad character and that in the present case he acted in accordance with that bad character.

¶ 21    Zotto says the instruction was flawed because it merely provided a "laundry-list of permitted uses," which did not "effectively limit [the jury's] consideration of the evidence to any properly confined purpose."  But because Zotto's counsel tendered an instruction that included an identical "laundry-list,"[2] any purported error was invited, and we therefore decline to consider

---

[2] The tendered instruction provided, in relevant part, as follows:

> You may consider evidence regarding these prior allegations only as it may relate to motive, intent, knowledge or to refute claims of self-defense and accident. . . .  Each juror must decide for him or herself whether this evidence relates to the permissible purposes listed above, and if so, what weight to give such evidence.

the merits of this argument.[3]  *See People v. Rediger*, 2018 CO 32,
¶ 34.

### B. Admission of the Sister's Police Interview

¶ 22     Shortly after Zotto told his sister that he had shot the victim, the sister called the police.  Later that day, a detective conducted a brief recorded interview of the sister.

¶ 23     At trial, the prosecution called the sister to testify about Zotto's confession.  On direct examination, she said Zotto told her that he planned to dump the victim's body at a job site, but the victim was too heavy.  On cross-examination, the sister acknowledged that she had not told the detective about Zotto's plan.  The sister also testified on cross-examination that she could not remember certain statements she had made to the detective, including that when Zotto first began discussing the incident, he said he did not remember anything; that Zotto told her the

---

[3] To the extent Zotto argues that the court's instruction erroneously permitted the jury to consider whether the prior act evidence "established" motive, intent, or lack of accident, the argument is too undeveloped for us to address.  *See People v. Cuellar*, 2023 COA 20, ¶ 44.  We note, however, that under CRE 404(b)(2), prior act evidence is admissible to "prov[e]" motive, intent, or lack of accident.  For that reason, we do not see why use of the word "establish" amounts to error.

argument with the victim intensified around midnight when the couple began going through unpaid bills; and that Zotto said when he took the gun from the victim, it was already "cocked," and that type of gun would "stay in the shooting position sometimes after it was cocked." Defense counsel impeached the sister by playing short clips of the interview relating to those three statements.

¶ 24    Following cross-examination, the prosecution moved to admit the sister's recorded interview to rehabilitate the sister after the defense's "credibility attack." The court agreed that the cross-examination amounted to a "wholesale attack on [the sister's] credibility" and admitted the recording of the entire interview.

¶ 25    On appeal, Zotto argues that the court erred by admitting the recorded interview.

1.    Applicable Legal Principles

¶ 26    In Colorado, a witness's prior consistent statements are admissible under two theories. Under CRE 801(d)(1)(B), a prior consistent statement may be admitted as substantive evidence when it is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *See People v. Eppens*, 979 P.2d 14, 20 (Colo. 1999). Prior consistent

statements are also admissible "outside CRE 801(d)(1)(B)" to rehabilitate a witness "when [the] witness'[s] credibility has been attacked." *Id.* at 21.

¶ 27    How much of a prior consistent statement is admissible for the latter purpose depends on its relevance and probative use, which turns on the scope of the impeachment and the attack on the witness's credibility. *People v. Clark*, 2015 COA 44, ¶ 126. "If the impeachment goes only to specific facts, then only prior consistent statements regarding those specific facts are relevant and admissible." *Id.* (citation omitted). But if the impeachment is "general and not limited to specific facts, then the jury should have access to all the relevant facts, including consistent and inconsistent statements." *People v. Elie*, 148 P.3d 359, 362-63 (Colo. App. 2006) (witness's entire videotaped statement was admissible as a prior consistent statement where defense counsel cross-examined the witness "on almost every aspect of his account of the crime").

### 2.    Discussion

¶ 28    Zotto contends that the recorded interview was not admissible in its entirety because counsel's impeachment of the sister was

limited and targeted, not a "wholesale attack" on her credibility. Even if we assume that the court erred, we conclude that any error is harmless.

¶ 29     Zotto insists that the recorded interview prejudiced him because it "reveal[ed] [the sister's] emotional reaction" and put "improper and inflammatory character and opinion testimony" in front of the jury.  But in his briefing, he mentions only five comments by the sister: (1) "[P]oor kids"; (2) "I don't understand why he waited [to tell me about the shooting]"; (3) "I had talked to a lawyer and told him to shut up"; (4) "I was devastated. . . .  I couldn't even believe he was my family at that time"; and (5) "I didn't understand how he could be at work all day, kids at home, dogs at home, she's in the trash can in 90-degree weather since Saturday night and it's Monday -- Tuesday."  And he does not explain how their admission prejudiced him.

¶ 30     True, the sister cried during some of the interview, but crying is not per se prejudicial, and, in any event, the jurors also heard a seven-minute 911 call, during which the sister sobbed uncontrollably, and saw the sister crying during cross-examination.

¶ 31    And we cannot say that the sister's brief reference to the couple's children or to her own feelings of shock and sadness amounted to "inflammatory" comments.  Defense counsel herself elicited testimony from the sister that the victim "was the most amazing woman [she] kn[ew]," and "this whole thing [wa]s upsetting to [the sister]," in part because she "lost the kids."  The sister's statement that a lawyer had advised Zotto to "shut up" did not reflect poorly on Zotto, especially as he had already come clean to the sister.  And we see no obvious prejudice from the sister's comment about Zotto's short delay in confessing, particularly in light of the fact that she answered several questions on redirect examination about the delay, all without objection.  The only facially prejudicial statement is the sister's reference to Zotto's ability to keep up appearances even as the victim lay dead in a trash can in the garage.  But given all the other statements about the victim being found dead in a trash can, and the sister's specific testimony that Zotto placed the victim there, we are confident this single comment from the recorded interview did not substantially influence the verdict.  *See People v. Short*, 2018 COA 47, ¶ 57 (error in admitting evidence was harmless when evidence was cumulative

14

of properly admitted testimony); *People v. Casias*, 2012 COA 117, ¶ 64 (same).

## III.   Self-Defense Jury Instruction

¶ 32    Lastly, Zotto argues that the court erred by instructing the jury on two exceptions to self-defense — provocation and initial aggressor — because there was insufficient evidence to support each of the exceptions.

¶ 33    The trial court must "instruct the jury correctly on all matters of law for which there is sufficient evidence to support giving instructions." *People v. Knapp*, 2020 COA 107, ¶ 20.  However, the jury should not be instructed "on abstract principles of law unrelated to the issues in controversy." *Id.* (quoting *Castillo v. People*, 2018 CO 62, ¶ 34).  The trial court must determine whether there is sufficient evidence to warrant an instruction on an affirmative defense and any exceptions to that defense. *Castillo*, ¶ 34.

¶ 34    The court agreed to instruct the jury on self-defense involving the use of deadly force.  *See* § 18-1-704(1)-(2), C.R.S. 2024 (a person may use deadly force only if, among other circumstances, there are reasonable grounds to believe that he is in imminent

15

danger of being killed or of sustaining great bodily injury). But the right to use force in self-defense is not unlimited. A person forfeits that right if he was the "initial aggressor" — the person who "initiated the physical conflict by using or threatening the imminent use of unlawful physical force," *Castillo*, ¶ 41 (citation omitted); § 18-1-704(3)(b) — or if he provoked the victim to attack him so that he could then use physical force against the victim, *Galvan v. People*, 2020 CO 82, ¶ 19; § 18-1-704(3)(a).

¶ 35 We review de novo whether there was sufficient evidence to support an instruction. *Castillo*, ¶ 32. We reverse based on a preserved claim of an instructional error only "if the error substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* at ¶ 57 (quoting *Hagos*, ¶ 12).

¶ 36 This was not a self-defense case, or even a case in which counsel advanced alternative defenses, one being self-defense. So even assuming the court erred by instructing the jury on exceptions to self-defense, any error was surely harmless.

¶ 37 In her opening statement, defense counsel did not say the case involved self-defense. She told the jury that the evidence did not support a finding of first degree murder because Zotto was "drunk

and emotional" and acted "impulsively and hastily" rather than intentionally and after deliberation.

¶ 38     In closing argument, defense counsel did not once mention the self-defense instruction or tell the jury that Zotto had shot his wife in self-defense.[4]  No evidence supported a theory that his use of deadly force was necessary to prevent him from being killed or sustaining great bodily injury.  Defense counsel theorized that the victim was "leaning forward" at the time Zotto pulled the trigger, but she did not explain why that mattered or even vaguely suggest that the victim was advancing on Zotto or that she had made any aggressive movements.  There was no evidence to support such a theory in any event.  The only evidence about the victim's actions just before Zotto fired the gun came from Zotto's statement to the sister — that the victim was in a defensive position, with her hand up and pleading with Zotto not to shoot.

---

[4] Defense counsel argued that Zotto grabbed the gun from the victim "in self-defense."  But Zotto was not prosecuted for injuries the victim might have sustained during any struggle over the gun. He was prosecuted for shooting the victim in the face after he had gained control of the gun.

¶ 39    For this reason, defense counsel did not ask the jury to find

Zotto not guilty on the ground that the shooting was justified.

Instead, she argued that Zotto was guilty of manslaughter because

he had acted recklessly by pointing the already-cocked gun at the

victim while he was drunk.  As the People point out, a claim that a

person acted recklessly is legally irreconcilable with a claim that he

acted in self-defense.  *See People v. Pickering*, 276 P.3d 553, 556

(Colo. 2011).

¶ 40    On this record, there is no reasonable possibility that the jury

would have found Zotto not guilty based on self-defense if the

instruction had omitted the exceptions.  Therefore, any error does

not warrant reversal.

IV.    Disposition

¶ 41    The judgment is affirmed.

JUDGE J. JONES and JUDGE GOMEZ concur.

18